January Term,
1861.

PILLING et al.
v.
OTIS.

13  495
, 87  84

## PILLING and another vs. OTIS.

Where a merchant owing a large amount of debts, sells out his entire stock of goods, being all his property, to his brothers upon a credit of five years, it is error for the court to refuse to instruct the jury that if the sale was made "upon a long and unusual mercantile credit, such credit is a *badge* of fraud to be considered by the jury;" although at the same time it did instruct them that it was a circumstance which they might consider in arriving at the question of fraud, but was not of itself a badge of fraud. Facts connected with a sale tending to show fraud therein, are signs, marks or badges of fraud.

It is inaccurate for a court, on a question of fraud in a sale, to instruct the jury that in order to avoid it, there must have been an intent to "hinder, delay *and* defraud" the vendor's creditors. The statute treats the intent to defraud, as distinct from that to merely hinder or delay, and *either* avoids the sale.

Where a legal proposition would be correct with a mere alteration at a particular point from a conjunctive to a disjunctive form, an exception ought properly to specify the exact point of objection, and not be taken to the entire proposition. But whether this is absolutely essential, not determined.

APPEAL from the Circuit Court for *La Fayette* County.

The defendant *Otis*, as a deputy marshal for the district of Wisconsin, seized a stock of goods as the property of Abram H. Pilling, under an attachment issued from the United States district court. *Elias* and *Isaac Pilling*, brothers of Abram H., claimed the goods under a sale made by him to them before the issuing of the attachment, and brought this action to recover the goods. The principal question in the case was, whether the sale was fraudulent as to the creditors of the vendor. The plaintiffs obtained a verdict, and a motion for a new trial was overruled; from which ruling the defendant appealed. The points presented by the record are stated sufficiently in the opinion of the court.

*Ely & Boies*, for appellant.

*James H. Knowlton*, for respondents.

*By the Court*, PAINE, J. Among other circumstances relied on to show fraud in the sale under which the plaintiffs claimed, was the fact that the sale was upon a long and unusual mercantile credit. The counsel for the defendant asked the court to instruct the jury, that if such was the fact, "it was a badge of fraud." This was refused, but the court at the same time told them that it was a circumstance to be

April 10.

considered by them in arriving at the question of fraud, but was not of itself a badge of fraud. As we understand the meaning of the word "badge," this was error. It does not mean that the evidence must be conclusive, nor that it must require the jury to find fraud, but only that it is one of the signs or marks of fraud, and has a tendency to show it. There may be great difference in the weight to which different facts, constituting badges of fraud, are entitled as evidence. One may be almost conclusive, another furnish merely a reasonable inference of fraud. Yet both would be badges of fraud, and either might be so explained by other evidence as to destroy its effect. The books accordingly speak of strong badges and slight badges of fraud, of conclusive badges and badges not conclusive, meaning by the word "badge," nothing more than that the fact relied on has a tendency to show fraud, but leaving its greater or less effect to depend on its intrinsic character. Thus in the celebrated *Twyne's Case*, referred to in Roberts on Fraudulent Conveyances, 545, the fact that the conveyance contained an express statement that it was made in good faith, was held to be a badge or sign of fraud. And the reason given is, that "unusual clauses always *induce suspicion*," showing that circumstances which induce a suspicion of fraud, are signs, marks, or, what is the same thing, badges of fraud. When therefore the court told the jury that the fact that the sale was upon a long and unusual mercantile credit, was a circumstance proper to be considered by them, but was not a badge of fraud, it was equivalent to telling them that it had no tendency to show fraud. So that, although they considered it, they could give it no effect.

It might well be that an honest sale might be made upon a long and unusual credit. But it is equally true that it might be with any of the usual badges of fraud, such as a retention of possession by the vendor, &c. Any sale may be sustained by explanatory proof overcoming the inference of fraud which certain facts taken alone would warrant. And the court should in all cases submit the evidence of fraud to the jury with proper suggestions upon this point. But this would not warrant it in instructing them that certain facts

January Term,
1861.

BILLING et al.
v.
OTIS.

which, taken alone, had a tendency to show fraud, had no such tendency.

We think the charge is also liable to the objection, that it confounds the distinction between the mere intent to hinder and delay creditors and the intent to defraud them. The statute clearly recognizes this distinction. It makes void all conveyances made "with intent to hinder, delay *or* defraud" creditors. This languages implies that the intent to "defraud" is something distinct from the mere intent to "delay." And whoever has been familiar with trials involving the question of fraud in sales, has doubtless, often noticed the necessity of this distinction. It is frequently the case that debtors, with an honest intention to pay their creditors in the end, make some shift or transfer merely to gain time. And it is usual in such cases for counsel to lay great stress upon the facts indicating the intent to pay at last, as disproving fraud. It is natural for the minds of jurors as well as others, to give them that effect. For the term fraud, as ordinarily understood, imports something of a more vicious character than the mere production of a delay of judgment. If a court, therefore, should tell a jury that it required "an intent to hinder, delay *and* defraud creditors," in order to avoid a sale, they might very naturally find the sale good, though satisfied of the intent to delay, upon the ground that the debtor also intended to use the time gained by providing for full payment in the end. The charge in this case was given in the form stated, and for that reason we think it liable to the objection urged against it on the argument here. But the exception to this portion of it was general, to the entire proposition stated, and did not serve at all to call the attention of the court to the precise point of the objection. This might readily have been done. If counsel had excepted to so much of the charge as coupled the intent to defraud with that to delay creditors, in order to avoid the sale, the court would have seen the ground of exception, and would undoubtedly have corrected the inaccuracy. The object of an exception is to call the attention of the court to the objectionable matter, in order that it may correct it. True, the rule is usually complied with by an excep-

January Term, tion to any distinct proposition stated by the court. But
1861.       where the proposition would be entirely correct by a mere
CASE et al.  change from the conjunctive to the disjunctive form, at a
v.           particular part of it, the spirit of the rule concerning excep-
JEWETT.      tions would seem to require that the exception should spec-
             ify the form of language rendering it objectionable.

But without determining whether this should be estab-
lished as an imperative rule, or whether this judgment could
be reversed upon this exception, we think it should be re-
versed, with costs, for the reason first stated, and the cause
remanded for a new trial.