## AVERY vs. JOHANN and others.

FRAUD: *Sale of all debtor's property subject to execution; when void as to creditors.*

1. Where one purchases the whole of a debtor's property subject to sale on execution, knowing that his vendor is largely indebted, and has recently declared his intention not to pay, the mere fact that such debtor assures him, at the time of the sale, that one purpose of it is to enable him to pay the debt, will not purge the transaction of bad faith; but the vendee must see to it that the purchase money is actually applied (so far as necessary) to the discharge of such debt.
2. The facts that vendor was indebted, that he offered for sale the whole of his property liable to execution, and that vendee had reason to doubt and did doubt whether he did not intend to evade the payment of the debt, are sufficient to render the sale void as to creditors

APPEAL from the Circuit Court for *Ozaukee* County.

In September, 1868, the present plaintiff commenced an action in said court against *Nicholas Johann and wife*

(with others) to foreclose a mortgage (made in 1856) of certain lands belonging to said *Nicholas*. On the 15th of October following, said *Nicholas and wife* conveyed the farm on which he lived, consisting of 320 acres of land in said county, to his two sons *John W.* and *Peter Johann*, and received back a mortgage thereof to secure a part of the purchase money, and also an agreement of said *John W.* and *Peter*, under seal, whereby, in consideration of the conveyance so made to them, they undertook to provide, in certain specified ways, for the maintenance of said Nicholas and wife during the remainder of their natural lives. In the following November, plaintiff recovered judgment in his said foreclosure suit, and, after sale of the mortgaged premises, perfected a personal judgment in January, 1869, against said *Nicholas Johann*, for a deficiency in the proceeds of such sale, amounting to $3,769. An execution for the amount, delivered to the officer in June, 1869, was returned *nulla bona*. Thereupon plaintiff commenced the present action, in which *Nicholas, John W.* and *Peter Johann*, and their respective wives, were made defendants; and in which he sought to have said sale and conveyance to *John W.* and *Peter Johann* set aside as fraudulent, and also sought to have a receiver of the property of said *Nicholas* appointed, etc.

The court found the following facts, in addition to those above stated:

That on the 26th of September, 1868, *Nicholas Johann* stated to plaintiff's attorney that he would not settle the debt for which this suit is brought, and that plaintiff would not be able to collect it out of the property which he (*Nicholas*) then had in said county, and that he was smarter than plaintiff's attorney; that the defendant *Peter* was present and heard the above statement; that said *Nicholas* made the conveyance of October 15th, 1868, with intent to hinder, delay and defraud the plaintiff; that defendants *John*

*W.* and *Peter* made the purchase and took the conveyance with full knowledge of such intent; that by such conveyance said *Nicholas* disposed of, and placed beyond reach of an execution on plaintiff's judgment, all his property which was liable to execution; that defendant *John W. Johann,* at the request of said *Nicholas,* eight or ten days before the deed, mortgage and agreement of October 15, 1868, were reduced to writing, but after the agreement was made, and its terms settled upon, and after $2,000 had been paid thereon, consulted an attorney, in company with said *Nicholas,* as to whether said agreement was valid and would stand in the law as against plaintiff's demand, and upon such consultation concluded that it would, and thereupon, afterwards, the deed, agreement and mortgage were reduced to writing and executed; that on said 15th of October, 1868, *Nicholas Johann* was indebted to *John W.* and *Peter* for labor performed by them from the time of their majority to that date, in the sum of $3,025; that the consideration of said conveyance, expressed therein, was $12,025; that said consideration was paid, or agreed to be paid, as follows: for 280 acres, not including the homestead, $9,025; viz., the $3,025 due from *Nicholas* to *John W.* and *Peter,* $2,000 cash paid down at that time, and $4,000 to be paid in money—one half May 1st, and the other half June 1st, 1869, for which two notes were executed by said *John W.* and *Peter,* and delivered to *Nicholas* October 15, 1868, which were paid by the makers about the time of their maturity; that said payments were made with knowledge on the part of said *John W.* and *Peter* of the intention of *Nicholas* not to pay plaintiff's demand; that the agreement for maintenance above described was executed in consideration of the conveyance of the remaining forty acres of said land, constituting the homestead; that the value of said homestead was $3,000, and said agreement was of the value of $1,046 a year.

Upon these facts the court held that the sale, conveyance, etc., of October 15th were fraudulent and void as against the plaintiff; that the real estate described in the deed, except the homestead, should be sold by the receiver appointed herein, and plaintiff's judgment, etc., paid out of the proceeds, etc., etc.

Judgment accordingly; and defendants appealed.

*Mann & Cotzhausen*, for appellants.

*David S. Ordway* and *E. Mariner*, for respondent.

DIXON, C. J. There can be no question as to the defendant *Peter Johann's* knowledge, at the time of sale, of his father's intention to hinder and defeat the payment and collection of the debt due the plaintiff. This knowledge he not only admitted, as a witness called by the plaintiff at the trial, but it was otherwise positively proved. He was present at the conversation between his father and the plaintiff's attorney a few days before the sale, and heard his father declare his purpose not to pay the mortgage debt, and to prevent the collection of the money. It is not improbable that he knew—indeed it seems almost certain from the facts and circumstances of the case that he must have known—that such was his father's intention, before the conversation took place. But whether he knew it before or not, he must have learned it then, which was but a very short time before the sale to himself and his brother *John W. Johann*. That sale was of all his father's property, both real and personal, valued at $12,000 and upwards, as he and his brother testify. Nothing was left upon which a levy could be made, or payment of the debt enforced by proceedings against the father alone, especially after he absented himself in Germany, as it seems he very soon did. By such sale, supposing its validity could be sustained, the father succeeded in placing himself in the very position he desired so as to defeat the collection of the debt, and to consummate and give effect to his

previously declared and known purpose and intent to defraud the plaintiff; and the only question would seem to be, whether the sale can be upheld, and thus the fraudulent intent and purpose consummated, on the ground that the father informed the sons at the time of the sale that one of his objects in making it was to obtain funds with which to pay the debt. Did such declaration at the time of sale, and which turns out to have been false, purge the transaction of fraud, and transform the sons into innocent purchasers? We are of opinion that it did not, and that the least a purchaser under such circumstances could do, would be to see to it and know that the purchase money was applied in payment of the debt, or otherwise he must stand chargeable as a purchaser in bad faith, or with a knowledge of the debtor's fraudulent intent. This is no hardship upon the purchaser who knows the debtor's circumstances and his previously declared fraudulent purpose, and has good reason to suspect that such purpose may still exist at the time of sale. It is a rule which promotes fair dealing and honesty, and discourages fraudulent schemes and devices to enable debtors to shift and smuggle away their property beyond the reach of creditors.

As to the defendant *John W.'s* knowledge of and complicity in the fraudulent purpose of his father, the evidence is scarcely less satisfactory than as to *Peter's*. He well knew the existence of the debt, and his father's neglect and refusal to pay it, and the other facts as to him are as stated in the tenth finding of the circuit judge. He testifies that before the papers were executed, and before any considerable portion of the consideration money was paid, he consulted an attorney as to whether the agreement or purchase would stand in the law as against the debts of his father. He also testifies that he knew of but one debt —the debt in controversy. The question has been very pertinently and justly asked, why this inquiry

should have been made, if he believed at the time that his father honestly and truly intended to pay the debt out of the proceeds of the sale, as he affects now to testify. He had written a letter but ten days before, in the name of his father, to the plaintiff's attorney, to ascertain what settlement could be made of the debt, and was undoubtedly familiar with his father's views and intentions with reference to it. At all events, the inquiry made of the attorney, which he himself acknowledges, clearly shows that he had his doubts and suspicions, which were evidently not without good reason; and this alone was sufficient to deprive him of the character of an innocent or *bona fide* purchaser without notice. In the case cited and relied upon by his own counsel, *Atwood v. Impson*, 20 New Jersey Eq. R. (5 C. E. Green), 150, the rule applicable here is thus correctly stated: "A sale, in making which the object of the debtor is to hinder, delay, or in any way put off his creditors, is void if made to one having knowledge of such intent; and this knowledge need not be actual positive information or notice, but will be inferred from the knowledge by the purchaser, of facts and circumstances sufficient to raise such suspicions as should put him on inquiry." There cannot be much doubt, we think, that the defendant *John W.* had knowledge of such facts and circumstances as raised a suspicion in his mind, and did and ought to have put him upon inquiry, so that he purchased and paid at his peril, provided the debt due the plaintiff was not paid by his father, as he says his father at the time proposed to do.

These observations, we believe, dispose of the entire merits of the controversy involved on this appeal; and as we see no errors or defects which should prevent a judgment on the merits, the judgment of the circuit court must be affirmed.

*By the Court.*—Judgment affirmed