## DAVID VS. BIRCHARD.

*November 10 — November 22, 1881.*

MORTGAGE: *(1) May be fraudulent though given to secure an honest debt.*
REVERSAL OF JUDGMENT: *(2) For misleading instructions.*
PARTNERSHIP. *(3) Rights of firm creditors as against sales, etc., by individual partners.*

1. Under the statute (sec. 2320, R. S.), a mortgage is void as against the mortgagor's creditors, though given to secure an honest debt, if given *with intent to hinder and delay* the other creditors.

2. An instruction to the above effect having been asked for by the appellant, and the judge having given it with qualifying remarks which may have misled the jury, the judgment is reversed for that reason.

[3. *It seems,* that one partner cannot apply to the payment of his individual debt the property of the firm, to the prejudice of its creditors; that, to sustain a sale of such property by one of the partners to another, as against the creditors of the firm, it must appear that the firm was solvent at the time of such sale; and that, where two persons have held themselves out as partners, one of them, being of full age, cannot be heard to allege, as against the firm creditors, that the contract of partnership was void because the other was a minor.]

APPEAL from the Circuit Court for *Grant* County

Action by *C. C. David* to recover the value of certain goods and merchandise taken by the defendant, as sheriff of Grant county, under certain writs of attachment issued out of the circuit court for said county. The case is sufficiently stated in the opinion. There was a verdict and judgment for the plaintiff; a new trial was refused; and defendant appealed from a judgment in accordance with the verdict.

David vs. Birchard.

For the appellant there was a brief by *Hazelton & Provis* and *Geo. Clementson*, and oral argument by *Mr. Provis*.

For the respondent there was a brief by *Thomas & Fuller*, and oral argument by *Mr. Fuller*.

COLE, C. J. The exceptions which are relied on for a reversal of this judgment are those taken to the refusal of the court below to give certain requests as asked by the defendant; also exceptions taken to some portions of the general charge. The plaintiff bases his right to recover the value of the goods in controversy upon a chattel mortgage given him by his brother, J. W. David, bearing date December 14, 1877. The defendant, as sheriff, seized the property under writs of attachment sued out by the creditors of David & Taylor, as they describe themselves in their writs, for goods sold in the fall of 1877. The mortgagor, J. W. David, was confessedly a member of the firm of David & Taylor, if any such firm ever existed. But whether such a partnership ever in fact was formed, so far as the attaching creditors were concerned, was a question much litigated on the trial. The plaintiff asserts that no such partnership existed; that while there was talk and strong expectations on the part of J. W. David that such a partnership would be actually formed during the summer or fall of 1877, yet the arrangement was really never consummated, because Taylor was a minor, and neither he nor his guardian for him furnished the amount of capital which it was understood he should contribute in order to form the partnership and become interested in the concern. The plaintiff also claims that the mortgage was given to secure a *bona fide* indebtedness due him from J. W. David for money previously loaned and liabilities incurred; and he further claims that the attaching creditors, when they sold the goods, were informed of the exact state of things about the proposed partnership of David & Taylor.

We will allude to the facts no further than seems necessary

to make plain the application of some of the instructions. The main question in the case was, whether the mortgage under which the plaintiff claimed the property was fraudulent and void as to the attaching creditors. As bearing on that question instructions were asked in different forms, some of which were given without qualification. That was the case as to the second and sixth; but most of the instructions were modified or explained by the learned circuit judge. The counsel for the defendant insists that the tendency of these qualifications was to destroy the point of his instructions, and create a wrong impression on the minds of the jury as to what facts would render the mortgage fraudulent. We think this criticism as to the effect of the remarks of the learned circuit judge, qualifying some of the instructions asked, is not without foundation. For example, in the third instruction the court was asked to charge that "if the chattel mortgage was given upon the stock by J. W. David, and was taken by *C. C. David* with the intent to hinder and delay the creditors of J. W. David, it is void, even though the amount named in the mortgage was a valid indebtedness." To this the circuit judge added these qualifying remarks: "This is true so far as it goes. But if it was given and taken to secure an honest debt, merely giving the mortgagee a preference, it is not void merely because its effect will be to hinder others from collecting debts on the same property."

The defendant's counsel insists that the modification really interpolates into the statute a condition wholly antagonistic to its object. He says it is not the honesty of the debt secured by, but the purpose of the conveyance, to which the statute has reference; that an honest debt is an important factor in the transaction; but if the mortgage was made with the intent to hinder and delay creditors, then it is void though an honest debt be secured by the instrument. This view of the statute is doubtless correct. Section 2320, R. S.; *Pilling v. Otis*, 13 Wis., 495; *Smith v. Hardy*, 36 Wis., 418. The stat-

ute clearly avoids the mortgage if it was made and taken by the parties to it with the intent to hinder and delay the creditors of the mortgagor. But the counsel on the other side say, in answer to this view, that the circuit judge simply meant in these remarks that a mortgage which secures an honest debt due to the mortgagee is not void merely because other creditors are unable to collect their debts; in other words, that the proper meaning of the instruction as given is, that a failing debtor may make preferences by securing one creditor and not others; that if he turns out his property for its full value to pay or secure an honest debt, the transaction is lawful although it may hinder and delay other creditors in collecting their debts; that in such a case, if the debtor's property is not sufficient to pay all his creditors, some must suffer; but that it is no more a fraud to secure or pay one creditor by giving a mortgage upon his property, than it would be to pay him in money, though the inevitable consequence of the transaction is to diminish the debtor's resources or means to pay other creditors. But we think this is not the way the instruction, as modified, would have been understood by the jury.

The intent or purpose of the parties in giving and receiving the mortgage seems to have been lost sight of or ignored in the charge. And the jury may have supposed, if the mortgage was given to secure an honest debt, it was not fraudulent, though the intent of the parties was to hinder and delay the creditors of the mortgagor. And this is the more apparent from the refusal to give the fifth instruction in the precise form asked. That was this: "Where a mortgage is given with intent to hinder, delay or in any way put off the creditors of the mortgagor, it is void if the mortgagee had knowledge of such intent, and this knowledge need not be actual, positive information or notice, but may be inferred from the knowledge of the mortgagee of facts and circumstances sufficient to raise such suspicions as should put him on inquiry." The court added these words: "This instruction is embraced

in the necessary inquiry, Has plaintiff shown that the mort-gage was given to him to secure actual indebtedness? It does not imply that a creditor may not secure his debtor by chattel mortgage, even though he knows that his debtor owes others, and will not be able to pay the others if he gets his pay out of the mortgaged property."

Again the intent or purpose of the parties in making and receiving the mortgage is put out of view. The idea made prominent seems to be, Was the mortgage given to secure an actual *bona fide* indebtedness? If so, it was valid. The instruction, as asked, was substantially in the language of the chancellor in *Atwood v. Impson*, 20 N. J. Eq., 150, 156, which was approved by this court in *Avery v. Johann*, 27 Wis., 251. The instruction seems to have been applicable to the facts disclosed, and should have been given as asked. Nor do we think the error in refusing to give the instruction was cured by what was said in the general charge. We have said that the main controversy in the case was as to whether the mortgage was fraudulent and void as to the attaching creditors. It was the right of the defendant to have that issue fairly submitted upon all the facts bearing upon the question, and passed upon by the jury. We think it was not submitted in the clear and pointed language it should have been, in consequence of the modification of some of the instructions.

The record presents in various forms another question which was much discussed on the argument. It was, whether the mortgage was not void because given by one partner upon partnership stock to secure an individual debt. There is no dispute about the fact that the debt secured was the personal liability of J. W. David. But the contention on the part of the plaintiff is, that Taylor had no interest whatever in the property mortgaged, and was never a partner of the mortgagor. We think, however, it was a fair question for the jury to determine, upon the evidence, whether Taylor and J. W. David had not, by their acts and declarations, so held them-

David vs. Birchard. •

selves out as partners as to justify the attaching creditors and others dealing with them in treating them as a firm. But the fact is said to be admitted that Taylor was a minor when the goods were sold the firm by the creditors, and therefore was disqualified from entering into a contract of partnership. Taylor, however, is not before the court seeking to avoid liability as a partner. Besides, stress is laid by the plaintiff on the fact that, before the mortgage was given, Taylor, in consideration of $25 to him paid by J.'W. David, released any real or apparent interest which he had or ever had had in the partnership. And the circuit court instructed that, if Taylor ever had any interest in the property by virtue of his own contract, and honestly transferred that interest to J. W. David, this would leave the property free for the latter to incumber or convey as he saw proper.

On this point we were referred to some cases which hold that where a *bona fide* sale has been made by one partner of a solvent firm, the remaining partner assuming the debts, the property formerly belonging to the partnership becomes the separate property of the purchasing partner, so that the partnership creditors are not entitled to any preference as against his individual creditors. But here, in order to make that rule applicable, the fact must appear that the partnership was solvent when Taylor sold his interest. That question, as well as the one whether he was a partner as respects the attaching creditors, should have been left to the jury. The defendant relies upon the familiar rule that the creditors of a firm are exclusively entitled to all the assets of such firm until their debts are paid; and therefore that one partner cannot apply to the payment of his individual debt the property of the firm to their prejudice. For this reason he claimed that the mortgage in question was void as against the defendant. But we do not feel called upon at this time to discuss this branch of the case further. It may be that on another trial, when the question is distinctly presented, a jury

may find that Taylor never in any manner suffered himself to be so held out to the world as a partner of the firm of David & Taylor as to render him liable as such, even if he were an adult; and consequently, that none of the rights or liabilities of a partnership would have any application to the case.

But, for the errors already noticed, the judgment of the circuit court must be reversed, and a new trial awarded.

*By the Court.*— So ordered.