## BARTLES, Jr., *v.* GIBSON.

### (*Circuit Court, W. D. Wisconsin.* 1883.)

1. **FRAUDULENT CONVEYANCE.**
   Upon examination of the evidence in this case, it appears that the deed sought to be set aside was intended as a fraud on the creditors of the grantor, and the prayer of the bill that it be so declared is granted.

2. **SAME—KNOWLEDGE OF GRANTEE.**
   Where the grantee in a deed made to defraud the creditors of the grantor knows of the fraudulent intent of the grantor, or has knowledge of facts sufficient to excite the suspicions of a prudent man and put him on inquiry, he makes himself a party to the fraud.

3. **SAME—INADEQUACY OF CONSIDERATION.**
   Where the consideration expressed in a deed of land is far below the value of the land as known to grantor and grantee, this inadequacy of price is a strong circumstance in the case tending to show a fraud on creditors and a secret trust.

4. **LIMITATION IN BANKRUPTCY—REV. ST. § 5057.**
   Section 5057 of the Revised Statutes is in effect a statute of limitations, but, like any other statute of limitations, must be taken advantage of either by demurrer or answer, or it will be waived.

5. **SAME—PLEA AFTER ANSWER TO MERITS.**
   Although a court may in its discretion allow the plea of statute of limitations to be put in after an answer on the merits, in an equity case, under the circumstances of this case such plea cannot be allowed at that stage of the case.

6. **SAME—DISCOVERY OF FRAUD—LACHES.**
   Where a party injured by a fraud remains in ignorance of it, without any fault or want of negligence or care on his part, the bar of the statute of limitations does not begin to run until the fraud is discovered, though there are no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party; and as, in this case, the suit was instituted promptly after the discovery of the fraud, the statute is not a bar to the action, nor can complainant be held to have been guilty of laches in not sooner instituting suit.

7. **DISCHARGE OF BANKRUPT—BAR TO SUIT AGAINST GRANTEE.**
   The decision and order of a bankruptcy court granting a discharge of a bankrupt, on an issue made by a creditor of the bankrupt, objecting to such discharge, cannot be considered a bar to a subsequent suit by such creditor, as the purchaser of land sold by the assignee of the bankrupt, against a grantee of such land in a conveyance that is a fraud on the creditors of the bankrupt.

8. **INADEQUACY OF CONSIDERATION.**
   The fraudulent grantee of the bankrupt, in such case, cannot set up as a defense that the creditor purchased said land for less than it was really worth.

In Equity.

*Pinney & Sanborn*, for complainant.
*Bingham & Pierce*, for defendant.

Before HARLAN and BUNN, JJ.

BUNN, J. This action is brought by Charles Bartles, Jr., a citizen of Williamsport, in the state of Pennsylvania, against the defendant, Joseph H. Gibson, a citizen of Massachusetts, to set aside as fraudulent a conveyance of an undivided one-eighth interest in a quantity of pine and hard-wood timber lands lying in Lincoln and Chippewa counties, in the northern portion of this state. The conveyance was made by warranty deed, executed by Charles E. Gibson, also a citizen of Williamsport, in the state of Pennsylvania, to the defendant, Joseph H. Gibson, his brother, who resides in the city of Boston, and dated the fifth day of February, 1878. At the time the conveyance was made Charles E. Gibson was insolvent, and owed very large sums of money. He had become security for one Peter Herdic, by indorsement and otherwise, for sums amounting to upwards of $160,000, and for the Williams Rubber Company, of Williamsport, in the sum of $90,000, so that his liabilities were many times the amount of all his assets. On August 30, 1878, six months after, he was adjudged a bankrupt in the district court for the western district of Pennsylvania, and one J. C. Hill duly appointed as his assignee. On the twenty-first of November, 1878, the usual assignment was made of all his property by the register in bankruptcy to the assignee. On the tenth of January, 1881, the assignee filed a petition in the bankruptcy court for leave to sell the bankrupt's interest in the property in question in this suit. The petition was granted and an order made thereon, and on February 16, 1881, the lands included in the deed were sold at public auction by the assignee, pursuant to such order, and the plaintiff became the purchaser for the sum of $200 for the lands lying in Lincoln county and $90 for land lying in Chippewa county.

The sale was reported and confirmed by the court, and on the eighth of March, 1881, a deed was made by the assignee to the plaintiff as purchaser at the bankrupt sale. The plaintiff was also a creditor of the bankrupt's estate in the sum of about $15,000. Peter Herdic was also adjudged a bankrupt by the same court on the same day that Charles E. Gibson was so adjudged. He had, however, failed previously, in November, 1877, for the sum of $2,000,000, before the deed by Charles E. Gibson to his brother was made, and was hopelessly insolvent at that time. The rubber company, for whom Charles E. Gibson had also signed, had also failed, and was adjudged a bankrupt.

The evidence shows that in 1877 Charles E. Gibson had considerable property, but at the time of the making of the conveyance by him to Joseph H. Gibson of the land in question, in February, 1878, he was insolvent. Two suits were already pending against him in the United States circuit court for the western district of Pennsylvania,—one by Jacob Torne for $5,000, and one by the First National Bank of Williamsport for $2,500 and upwards, in which judgment

was rendered against him soon afterwards, on the eleventh and twelfth of February, 1878. Other suits were soon commenced and judgments rendered; and when he went into bankruptcy his scheduled property available to his creditors amounted to nearly nothing. The land in question in this suit was not scheduled by the bankrupt. This suit was begun on April 20, 1881, by Charles Bartles, Jr., claiming to be the owner of the lands by virtue of his purchase at the bankrupt sale against Joseph H. Gibson, the grantee in the conveyance from Charles E. Gibson, alleging the sale to be fraudulent and void as against the creditors of the bankrupt; and the object of the suit is to obtain a decree so adjudging such conveyance, and requiring Charles E. Gibson to convey the lands to the complainant.

The issue is, for the most part, one of fact. Was the sale to Joseph H. Gibson made for the purpose of hindering, delaying, and defrauding the creditors of Charles E. Gibson? and if so, was Joseph H. Gibson privy to the fraud? We find this issue in favor of the complainant, upon the evidence.

Mr. Justice HARLAN, in announcing the decision of the court from the bench, said that his practice at the bar, and such experience as he had had upon the bench, did not enable him to recall a case in which fraud of the character charged had been more clearly and distinctly established than in this. In this judgment of the case I fully concur. The evidence shows the transaction to be marked with almost all the customary badges of fraud. So far as Charles E. Gibson himself is concerned, there is scarcely any attempt at denial of a fraudulent intent.

The grantor was, at the time of the conveyance, hopelessly and irretrievably insolvent, and knew himself to be so. His debts amounted to two or three times the value of his property. He was pressed to pay and could not pay, and suits for large amounts were already pending against him. He had already got much of his property into his wife's hands. He stated repeatedly that he had got his affairs fixed, and that his creditors could not collect from him; said that his wife had property, but that the creditors could not get anything from him. Under these circumstances, he takes his title papers, and Peter Herdic, for whom he had so largely signed, and who had already notoriously failed, and goes from his home in western Pennsylvania to Boston to find his only brother, in order to dispose of his interest in these lands which it seems was about the last property he had then undisposed of. The other part owners of the land resided at and near Williamsport, but he made no effort to sell to them, or to any one else there. His brother, Joseph H. Gibson, was a man of small means, and a superintendent in a piano manufacturing establishment in Boston. Had no money in bank, and kept no bank account. Had never dealt in western lands, and had no knowledge or notion of the value or use of the lands his brother proposed to sell to him. He had never seen the land, and has not seen it since, and had never been

in the lumber business. He took no means to ascertain their value or character, but says he had confidence his brother would not cheat him.

Defendant says that Herdic made the remark that they were pine lands, but that he, defendant, knew nothing about pine timber lands in the west; that they made the arrangement that his brother should sell him the lands for $5,000, and that he should raise the money and pay him for the land; that he did so, and that his brother went away *with both the deed and the money.* The consideration clause in the deed was left blank, and afterwards filled up with $5,000; but the defendant is unable to explain why this was so. The defendant's testimony on this point is as follows: "I can explain that in no other way than this. I don't know that it was. I don't understand it. I didn't know that it was. I have no recollection about it. I remember now that I told Mr. Dimmick to prepare the deed, except the consideration clause, and I would give him that afterwards." This can hardly be said to be a very lucid or satisfactory explanation. Nor is the defendant's explanation of how or when he got the money any more satisfactory. He has no recollection of it, and cannot tell. He presumes he had money by him at the time, but don't know when it was raised. In answer to the question whether it was his habit to keep large sums of money by him, not having any bank account, he says it was not at that time. The evidence shows that he was worth $12,500, Ten thousand of this was his interest in the business where he was employed, and the balance in mortgage securities. He was in no business except as superintendent in the piano establishment, on a salary. A man in these circumstances would usually know and be able to tell how he came by $5,000 in cash at one time to pay for lands that he knew nothing about and had no use for. The defendant, who remembers very little, says it is his impression that he told his brother that if he would take care of the lands and pay the taxes and protect his interest, that he would purchase; and his brother, Charles E. Gibson, says that it was arranged before the sale that he was to have the care of the lands, because the defendant said that he had enough to do and did not want the care of them. Accordingly, a power of attorney was prepared and executed by the defendant to the bankrupt, some 11 months after the execution of the deed, authorizing him to have the entire control and care of the land, * * * to pay all taxes on it, to sell, exchange, or mortgage the same, and in his name to execute, acknowledge, and deliver all deeds and papers necessary to such sale, exchange, or mortgage.

This power of attorney is in perfect keeping with the testimony of the witnesses Troxell and Young, who went to Boston afterwards on pretense of trying to buy the land of defendant, that defendant, in conversation with them in Boston, told them that he was holding these lands for his brother, who lived at Williamsport, Pennsylvania; that his brother owned them; that his brother asked $18,000 or

$20,000 for the land, and that he would write to them and let them know the price.

These facts constitute very strong evidence, in connection with other circumstances in the case, to show that the transaction was in fact a secret trust, and so intended between the parties to it. It is shown that Dimmick, as well as Mary H. Gibson, the grantee's wife, was present when the transaction took place. But they are neither of them called as witnesses to the payment, which is of itself a very suspicious circumstance, and the proof of payment is allowed to stand upon the unsupported testimony of the parties to the fraud, if a fraud was committed, when, if defendant's statements are true, at least one disinterested witness might have been called to put the question of payment beyond doubt in the mind of the court. The testimony of the defendant on this question, as upon others, is exceedingly uncertain and unsatisfactory. And, upon the whole, we entertain great doubt whether any consideration whatever, as a matter of fact, ever passed upon the sale. But if there was any money paid we are convinced beyond a doubt that the payment was a simulated one, and that there was in reality no consideration.

The defendant testifies that he knew that his brother was in some difficulty, and that the trouble was of a financial character. Whether he knew all or not, he knew enough to put him upon inquiry.

The circumstances show that he must have known of the fraudulent intent of his grantor. And if so, or if he had knowledge of facts sufficient to excite the suspicions of a prudent man and put him on inquiry, he made himself a party to the fraud. *Atwood* v. *Impson,* 20 N. J. Eq. 156; *Baker* v. *Bliss,* 39 N. Y. 70; *Avery* v. *Johann,* 27 Wis. 251; Kerr, Fraud, 236; *David* v. *Birchard,* 53 Wis. 492; [S. C. 10 N. W. Rep. 557.]

Many lumbermen and experts in the value of pine lands were examined as witnesses on the question of value. The evidence shows beyond question that the cash value of the land at the time of the conveyance was, at the least, three times the consideration recited in the deed. The consideration named in the deed of the lands to Charles E. Gibson from Early, his grantor, and which he took with him to Boston and which defendant saw, as it was left with him during some part of their stay in Boston, was $14,023. Some of the witnesses, well acquainted with the land and timber, and who are competent to judge, put the value at $25,000. One witness put it at $20,000. I believe the weight of evidence shows it to have been worth at least $16,000. Since the sale it has become still more valuable. This is a strong circumstance in the case, tending to show fraud and a secret trust. And in this case there is no sufficient explanation of the inadequacy of consideration, even if the $5,000 were paid. *Kaine* v. *Weigley,* 22 Pa. St. 179; 1 Swift, Dig. 275.

This disposes of the principal issues in the case. There remains to be noticed some other questions discussed on the argument. After

the suit was commenced and the issue made up, and the time for amending the answer had, of course, elapsed, the defendant asked leave of the court to file an amended answer, among other things setting up the statute of limitations as a bar to the suit.

The limitation in Wisconsin, and the usual limitation for such an action under the state laws, is six years. But it was sought to plead the shorter term of two years prescribed for such cases by the laws of congress. No reason whatever was given for not setting up this plea at the proper time, and as the limitation was a very short one, the court held that it would not be in furtherance of justice to allow the plea at that stage of the cause, and denied the motion so far as the plea of the statute of limitations went, but allowed the other amendments asked for. On the trial the motion was renewed, to allow this amendment also. But the court, Mr. Justice HARLAN concurring, sees no reason for disturbing the former decision of the district judge; especially as the testimony shows, beyond doubt, that there is not sufficient evidence in the case to support the plea. As the assignee in bankruptcy had no knowledge of the fraud until about five or six months before the sale to plaintiff and the commencement of the suit, section 5057 of the Revised Statutes of the United States provides that no suit, either at law or in equity, shall be maintained in any court, between an assignee in bankruptcy and a person claiming an adverse interest, touching any property or rights of property transferable to, or vested in, such assignee, unless brought within two years from the time when the cause of action accrued for or against such assignee, and this provision shall not in any case revive a right barred at the time when an assignee is appointed.

It is now settled that this section is in effect a statute of limitations, and I think there can be no doubt about its applicability as such to this case, if properly pleaded. Like any other statute of limitations, however, it must be taken advantage of either by demurrer or answer, or it will be waived. *Bailey* v. *Glover*, 21 Wall. 346; *Upton* v. *McLaughlin*, 105 U. S. 640; *Sullivan* v. *Railroad Co.* 94 U. S. 807, 811; *Prince* v. *Heylin*, 1 Atk. 494; *Dey* v. *Dunham*, 2 Johns. Ch. 191; *Hickman* v. *Stout*, 2 Leigh, 6; *Hepburn's Case*, 3 Bland, Ch. 110; *Chambers* v. *Chalmers*, 4 Gill & J. 420, 438; *Parker* v. *Kane*, 4 Wis. 1; *Sears* v. *Shafer*, 6 N. Y. 268; *Gulick* v. *Loder*, 13 N. J. Law, (1 Green,) 68.

Conceding it to be in the discretion of the court to allow the plea to be made after an answer to the merits in an equity case has been put in, still, considering the nature of the facts charged in the bill, and that no excuse was given for not making the plea at the proper time, and that the facts must have been within the knowledge of the party when he made his answer, and as the limitation prescribed by the statute is a short one, we think the discretion of the court was properly exercised in refusing to receive the plea at that stage of the cause.

It was ruled by the supreme court of the United States in *Bailey* v. *Glover*, 21 Wall. 349, as being in accordance with the weight of authority, that where, in such a case as this, the party injured by the fraud remains in ignorance of it, without any fault or want of negligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there are no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party. And the same doctrine is again affirmed in *Gifford* v. *Helms*, 98 U. S. 248, and *Upton* v. *McLaughlin*, 105 U. S. 640, *supra*.

The assignment in bankruptcy was made on November 21, 1878, and of course the cause of action in favor of the assignee would accrue on that day. This suit was commenced by the filing of complainant's bill on April 20, 1881, two years and five months afterwards. But the bill shows upon its face that the fraud charged was not discovered by the assignee or the complainant until within two years previous to the commencement of the suit, and this allegation is supported by the proofs. The property itself was not scheduled by the bankrupt, and it is shown that the assignee had no knowledge of his former ownership of the land, or of the fraud alleged, until December 1, 1881, less than five months before the commencement of the suit. So that it is clear the action was not barred, as against the assignee in bankruptcy, at the time of the complainant's purchase, on March 8, 1881; and if so, whatever right the assignee had to maintain the suit, was, by the sale and conveyance of that date, transferred to the complainant, without regard to the question of the complainant's knowledge, or want of knowledge, of the fraud. He could not bring the action until he got his conveyance from the assignee; and within forty days from the time he acquired the right to sue, this suit was brought, and within six months after the time the assignee first heard of the fraud.

Upon the hearing of the case no sufficient excuse was rendered for not making this defense at the proper time, or for not tendering such excuse before the district judge on the former application; and at this stage of the action, especially in the absence of anything in the evidence commending the defense to the favorable consideration of the court, the plea of the statute of limitations will not be permitted to be filed.

It was also claimed by the defendant that, independent of the statute of limitations, the assignee in bankruptcy and the plaintiff had been guilty of laches in not prosecuting the case sooner; but, for reasons before given, we think there is no ground for this claim.

Other amendments were also asked for on the hearing by the defendant, and offers of documentary proof made to correspond thereto. It was proposed to set up the discharge of the bankrupt granted by the district court for the western district of Pennsylvania, against the objection of the complainant, founded upon the same alleged fraud,

as a defense against the fraud charged in the bill of complaint, and to introduce the record of proceedings in that court as evidence— *First*, as a bar; and, *second*, if not as a complete bar, at the least, as evidence upon the main issue in this case that no fraud was, in fact, committed.

But we do not think this plea would be a good one if offered at the proper time, or that the evidence ought to be admitted to sustain the issue on defendant's part.

It is very probable, from the showing made, that the bankruptcy court did not regard the specifications based upon these frauds as sufficient ground for denying a discharge, for the reason that the alleged frauds were committed prior to the six months immediately preceding the adjudication in bankruptcy. However that may be, it is quite clear that the decision and order made up on that issue between Charles Bartles, as a creditor of the bankrupt, Charles E. Gibson, and Charles E. Gibson, cannot prejudge the present issue between Bartles and Joseph H. Gibson.

Suppose the bankrupt court, instead of granting the discharge, had sustained the objections made by Charles Bartles and refused to discharge the bankrupt. Could it be claimed that such an adjudication would have been evidence in this cause against Joseph H. Gibson? We think not. And if so, it seems equally clear that it cannot be used as evidence in his behalf. Estoppels of this kind should be mutual. That was an issue between Charles E. Gibson, the bankrupt, and Charles Bartles, as his creditor. To that issue the assignee in bankruptcy was not a party. Neither was Joseph H. Gibson. It was no concern of Mr. Hill, the assignee in bankruptcy, whether Charles E. Gibson should be discharged or not. The present issue is between different parties. It is neither between the same parties nor their privies. This is an issue between Charles Bartles, as a purchaser of property at the bankruptcy sale from the assignee in bankruptcy, and the defendant, Joseph H. Gibson. And not only are the parties different, but, in our judgment, the issue itself is a different issue; and it is doubtful whether, if all that is alleged in the bill of complaint be true, it should have prevented a discharge in bankruptcy. And so, probably, the bankruptcy court viewed it.

There is but one question more that is worthy of notice. It is claimed that there is an inadequacy of consideration in the sale to Bartles. But this objection does not lie in the mouth of the defendant to make. Bartles was a creditor of Charles E. Gibson to the amount of $15,000.

The estate of Charles E. Gibson had furnished no funds to enable the assignee to litigate this claim in behalf of the creditors. There was no other creditor who wished to assume the chance of such litigation at a greater price than the complainant paid. The assignee had a right to sell the claim at public auction for the best price it would bring; and the purchaser, whoever he might be, as against

the defendant, whatever the rights of the other creditors might be, would succeed to all the rights and take the title of the assignee. There is no suspicion that the sale was not a fair one. The purchaser took his own chances, and if the claim brought but a small price it was because the title to the property had been clouded by the wrongful act of Charles E. Gibson, in which the defendant voluntarily participated, and to which he made himself a party. *Stevens* v. *Hauser*, 39 N. Y. 302; *Rankin* v. *Harper*, 23 Mo. 586; *Den* v. *Lippencott*, 6 N. J. Law, 473; *Lynn* v. *Le Gierse*, 48 Tex. 140; *McDonald* v. *Johnson*, 48 Iowa, 77.

Decree for complainant according to prayer of bill, with costs.

HARLAN, J., who heard the case with the district judge, concurring.