Zimmerman vs. Bannon and another.

---

ZIMMERMAN, Receiver, Respondent, vs. BANNON and another, Appellants.

*November 28 — December 16, 1898.*

*Fraudulent conveyances: Credibility of witnesses.*

1. A mortgage of his share in a farm, given by a brother to his sister after the commencement of a suit against him and without any demand on her part, for no other consideration than her services in keeping house for him and his brothers under his verbal agreement, made eight years previously, that if she would do so she should have his share, and received by her with knowledge of the suit, *held*, to be fraudulent and void as to creditors, as being given with intent to hinder and delay them.

2. A conveyance made with intent to delay or defraud a subsequent creditor comes within the provision of sec. 2320, R. S. 1878, avoiding conveyances made with intent to hinder, delay, or defraud creditors; and it is none the less void though given to secure an honest debt.

3. Courts are never bound to accept as true the statement of a witness which is inherently improbable, though there may be no direct testimony contradicting it.

APPEAL from a judgment of the circuit court for Dane county: R. G. SIEBECKER, Circuit Judge. *Affirmed.*

On April 21, 1898, one Blanche E. Palmer recovered a judgment of $5,500 in the circuit court for Dane county against the defendant *Patrick H. Bannon,* in an action to recover for seduction and breach of promise of marriage. An execution was duly issued, and returned unsatisfied. Proceedings supplementary to execution were commenced, which resulted in the appointment of plaintiff as receiver of *Bannon's* property. At that time *Bannon* was the owner of a one-sixth interest in 160 acres of land, upon which the Palmer judgment was a lien. A few days prior to the rendition of said judgment, *Bannon* executed a mortgage thereon to his sister, the defendant *Julia Bannon,* purporting to secure the payment to her of the sum of $700. The receiver brings this action to set aside said mortgage, claiming that it was without consideration and was executed for the purpose of hindering, delaying, and impeding the collection of any judgment that might be secured in the pending suit. The defendants answered separately, each denying the fraudulent character of the mortgage, and alleging that it was founded upon a good and valuable consideration.

The case was tried before the court, who found the facts substantially as stated, and, in addition, that one forty of the land was *Bannon's* homestead; that the mortgage was not executed in compliance with any previous understanding between the parties that it should be executed, but was executed by *Patrick* on his own motion, and the fact of its

execution was then communicated to *Julia;* that *Patrick* executed the mortgage for the express purpose of hindering, delaying, and defrauding the said Blanche E. Palmer in the collection of any judgment that she might recover; and that the defendant *Julia* took the same with knowledge of such purpose and intention, and with the intention and for the purpose of aiding *Patrick* in such fraudulent intention. Judgment was entered setting aside said mortgage so far as it affected any of the property described except the homestead. Both defendants appeal.

For the appellants there was a brief by *H. T. Ames* and *Bird, Rogers & Bird,* attorneys for *Julia Bannon,* and *Olin & Butler,* attorneys for *Patrick H. Bannon,* and oral argument by *H. L. Butler* and *G. W. Bird.* They argued, among other things, that in order to render the mortgage fraudulent, it being given to a creditor, such creditor must have participated in the fraudulent intent. *Koch v. Peters,* 97 Wis. 492; *Bleiler v. Moore,* 94 id. 385; *Carey v. Dyer,* 97 id. 554. The promise to pay the sister, being enforceable but for the statute of limitations, furnished a proper and adequate consideration for the mortgage. *Ellis v. Cary,* 74 Wis. 176; *Estate of Kessler,* 87 id. 660; *Koch v. Williams,* 82 id. 186; *First Nat. Bank v. Bertschy,* 52 id. 438; *Bannister v. Phelps,* 81 id. 256; *Mehlhop v. Pettibone,* 54 id. 652.

For the respondent there was a brief by *Rufus B. Smith, R. M. La Follette,* and *G. E. Roe,* and oral argument by *A. G. Zimmerman* and *Mr. Smith.*

BARDEEN, J. We are urged to reverse this judgment because the findings are not supported by the evidence. No substantial end will be gained by a review of all the facts tending to support the conclusion reached by the trial judge. A reference to some of the leading facts must suffice. *Patrick* inherited the property in question from his parents. There were six children. The father died some thirty-six

years ago. The property was held in common, and used for the support of the family. The mother died in 1890. *Patrick*, *Julia*, and one or two of the other children lived on the farm, and continued to use it the same as they had done before the mother died. Some time in the spring of 1890, *Julia* talked of going to Dakota. At this time it is claimed that there was an agreement made between *Patrick* and *Julia* which may be best given in the language of the witness *Patrick:* "Made my share of the farm over to my sister about a week after mother died. I did not and never have executed any writings to my sister making the farm over to her; only this mortgage I gave her. That agreement was made in the spring of 1890. She was to stop there, and keep house for John and me and any of the rest of them that wanted to come home, and I would give her my share of the farm; that is the agreement just as it was made." The parties remained at the farm, and nothing was done towards carrying out this agreement on the part of *Patrick* until the execution of the mortgage mentioned. In the spring of 1897, suit was commenced against *Patrick*, in which large damages were claimed. During the pendency of the suit, he stated to several persons that the plaintiff would never get any of his property, and that he would put it out of the way. After the case had been noticed for trial, he executed and delivered the mortgage to *Julia*. It is admitted that at the time of the alleged agreement in 1890, nothing was said as to how long *Julia* was to stay on the farm and no value was placed on her services. It appears affirmatively that the matter was never talked of afterwards between them. There is nothing to show that *Patrick* was under any greater obligation to pay *Julia* for her services than the other two children who have lived there during a greater part of the time since 1890. The circumstances of the giving of the mortgage were in the highest degree suspicious. The lawsuit was being pressed for trial. *Patrick* and *Julia* drove

from the farm to Deerfield together, the former being on his
way to Madison. While at Deerfield, he went to an attor-
ney's office, had the mortgage drawn up for $700, executed
it, took the note to *Julia* and the mortgage to Madison, and
had it recorded. This was done without any talk or consul-
tation with *Julia* on the subject. There had been no de-
mand on her part that the alleged agreement of 1890 should
be carried out; no consultation as to the amount or value of
her wages; no agreement that a mortgage should be given
for her security in place of a deed. In fact, it seems to have
been a spontaneous outburst of brotherly generosity. The
defendants claim that it was but the resurrection of the
ancient promise. It seems to have come at a time quite
opportune to the interest of the *Bannon* family.

There are many other minor facts and circumstances which
have a bearing upon the question at issue, but which need
not be stated. They tend largely to impeach the transaction,
and throw doubt and suspicion upon it. There can be no
doubt but that *Julia* had full knowledge of the circumstances
surrounding *Patrick*. It is admitted that the lawsuit was
somewhat discussed at home. The situation must not be
judged from the mere statement of witnesses. Very few
cases can be found in the books where the fraudulent designs
of parties have been defeated that could not have been de-
cided the other way if the court had depended alone upon
the statements of interested parties. Fraud seldom works in
daylight. Its ways are hidden and secret. It is usually
masked when it appears in the sunlight. It travels *incognito*.
Its outward form is usually honest and virtuous. It is al-
ways plausible, and many times deceptive. Because this is
so, it is the duty of courts to use the judicial searchlight
with great care and prudence. The identity of this legal
bogy is frequently revealed by its environment. Facts and
circumstances, small and inconsiderable in themselves, often
lead to unerring conclusions. The story of the defendants

sounds plausible, but, when tested by the surrounding circumstances, it becomes improbable. Admitted facts are sometimes just as potential to impeach a witness as positive testimony. A court is not bound to accept a statement as true because there is no direct testimony contradicting it. It may be inherently improbable, or it may be impeached by the attendant circumstances. Courts are never bound to accept the statement of a witness which is against all reasonable probability. *Roth v. S. E. Barrett Mfg. Co.* 96 Wis. 615; *Groesbeck v. C., M. & St. P. R. Co.* 93 Wis. 505. The trial court seems to have reached a conclusion amply supported by the facts in the case, and we cannot disturb it. Sec. 2320, R. S. 1878, says that every conveyance or assignment, in writing or otherwise, of any estate or interest in lands, made with intent to hinder, delay, or defraud creditors of their lawful actions, debts, or demands, shall be void. A conveyance made with intent to delay a subsequent creditor comes within the statute. *Hoffman v. Junk*, 51 Wis. 613.

The defendant asked the court to find that *Patrick* made the agreement to convey to *Julia* as testified to by him, and that she performed services under such agreement, of the reasonable value of $700. These findings were refused, as being unsupported by the proof and immaterial. Whatever may have been the proper reason for his refusal, these findings became immaterial in view of the findings made. The defendant *Julia* having participated in *Patrick's* fraudulent design, and having taken her mortgage with knowledge of his purpose and in furtherance of it, the fact that *Patrick* may have justly owed her the full sum of $700 and gave the mortgage as security therefor, did not purge the transaction of its taint. It is not the honesty of the debt secured by, but the *purpose* of, the conveyance, to which the statute has reference. The mortgage in suit is none the less void though given to secure an honest debt, if given and received with intention to hinder and delay creditors. *David v. Birchard*, 53 Wis. 492;

Straker vs. Phenix Ins. Co. of Brooklyn, N. Y.

*Sweetser v. Silber*, 87 Wis. 102; *Bleiler v. Moore*, 94 Wis. 385. We see no reason for disturbing this judgment.

*By the Court.*— The judgment of the circuit court is affirmed.