FELLER, Executrix, Respondent, vs. LEONARD, Appellant.

*November 10, 1931—February 9, 1932.*

For the appellant there were briefs by *James E. Coleman,* attorney, and *William J. McCauley* of counsel, both of Milwaukee, and oral argument by *Mr. McCauley.*

For the respondent there were briefs by *Sawyer & Gehl* of Hartford, and oral argument by *Edward J. Gehl.*

The following opinions were filed December 8, 1931:

FOWLER, J. The appellant claims (1) that there is no evidence to support the finding of the jury as to the defendant's negligence, and (2) that the evidence shows that the deceased was guilty of contributory negligence as matter of law.

(1) The accident occurred on a much traveled state highway, paved with concrete to a width of eighteen feet with shoulders three to four feet wide. The appellant bases the claim of no negligence on her part on the testimony of herself and her husband, who were the only eye-witnesses to the accident. According to their testimony negligence of the defendant was positively disproved. They say the speed of the car was about forty miles an hour; that their car was on the right side of the road; that they saw the deceased on the shoulder of the highway walking towards them; that as they approached he edged onto the concrete and defendant turned her car towards the left to give him more room; and that when the deceased was about fifty feet from the car he ran towards the car with a wild look in his eyes and cast himself upon it.

If this were all there was to the case the defendant's position would be correct. But the circumstances, not in dispute or as the jury might properly infer them from the evidence, seem to us to justify the jury's findings. These were that the collision occurred on September 19, 1930, at 11 p. m. Just before the collision the defendant was driving north on a down grade approaching a curve to her left. A small·wide-

spreading tree was located on the west side of the road a short distance south of the apex of the curve. The automobile struck the deceased a short distance north of this curve. The defendant and her husband both say that when they first saw the deceased he was walking on the east shoulder. After the collision the body of the deceased lay on the east shoulder of the road, one arm extending over onto the concrete. His cap lay seventy-five or eighty feet south of the body a foot or so east of the concrete. His pipe lay two or three feet north of the cap about three feet east of the concrete. North of the curve on the west side of the road a short distance from where the body of the deceased lay was the residence of Mr. Strupp which the deceased had left a few moments before the accident. Strupp heard the defendant scream. When Strupp reached the scene a minute or so after he heard the defendant scream, the car stood about eighty feet north of the body, on the east side of the concrete, the left wheels a foot or so east of the black line at the center. The defendant claimed she stopped the car on the west side of the road after striking the deceased and that before Strupp arrived her husband moved it north to the east side of the road to clear the road for traffic, but the lapse of time was so short, the excitement of the defendant and her husband so great, and the position of the car on the concrete such as may have led the jury to infer that the car had not been moved.

The deceased was in a happy frame of mind while at Strupp's and there was nothing in his financial situation, physical or mental condition, or family relations to indicate that he contemplated suicide.

The claim of the defendant and her husband that the deceased intentionally threw himself upon their car can only be supported on the theory that he intended to commit suicide. Both the pre-existing facts and strong presumption preclude this inference. The credibility of the witnesses was for

the jury, and their claim that the deceased edged over onto the concrete and ran purposely into the oncoming automobile may well have seemed to the jury so preposterous as to warrant application of the rule "false in one false in all" and justify rejection of any or all of their testimony.

However, the evidence must furnish proof of the defendant's negligence, and rejection of the testimony of the eyewitnesses in its entirety does not of itself supply such proof. Unless the circumstances together with parts of such testimony warrant the inference of negligence the plaintiff's case must fall.

Sec. 85.40 (5), Stats. 1929, in force at the time of the accident, provides that in traversing curves where the driver of an automobile does not have a clear view of approaching traffic upon the highway, the speed shall be such as to enable the driver to stop within one-half the range of his vision. The curve, under the circumstances, required compliance with this provision, and in view of the statute the jury might properly infer negligence as to speed and control of the car, and that failure to reduce speed was due to not noticing the turn ahead soon enough which a proper lookout would have avoided. The distances between the cap and the body and the car and the fact of the down grade would also justify an inference that the speed was greater than claimed by the defendant. It is suggested that the collision could not have occurred if the defendant was driving on the concrete if the deceased kept on the shoulder, as sec. 85.44, providing that pedestrians shall walk on the left side of the highway and step off the traveled roadway on meeting a vehicle if practicable, required him to do, and thus want of proper speed and control did not cause the collision. But on approaching a left curve on a down grade in the nighttime one is likely not to notice the turn soon enough to avoid getting partially off the concrete onto the shoulder, in which case at the apex of the curve the car is likely to be headed for the ditch beside

the shoulder. If such were the instant case, it may well have been "impracticable" for the deceased to step to the left and that an emergency was created such as to justify him in attempting to run onto the concrete to avoid being struck, and if the jury so inferred the circumstances would supply the element of causation essential to make defendant's negligence actionable as distinguished from mere lack of due care. The jury may well have inferred that the deceased did have a "wild look" as testified by defendant, and that this look was due to fright from apprehension that the oncoming car was headed towards his left and would hit him unless he went to his right. While the case is close and inference of what actually happened verges on "mere speculation," under the well established rule that every reasonable inference in support of the verdict must be drawn we conclude that we must uphold the verdict.

(2) What is next above said as to the deceased's running to his right upon the concrete refutes the claim that he was guilty of contributory negligence as matter of law. The burden of establishing such negligence was upon the defendant. In view of the familiar rule that one in an emergency suddenly arising may act upon what seems to him at the moment likely to avoid impending danger although in retrospect it appears that his judgment was erroneous, we consider that the jury's inference of freedom from contributory negligence is supported.

*By the Court.*—The judgment of the circuit court is affirmed.

Rosenberry, C. J. (*dissenting*). I respectfully dissent from the conclusion reached in this case. I agree, as stated in the opinion, that it was within the province of the jury to disbelieve the testimony of the defendant and her husband. However, when that testimony is stricken from the case, I find no evidence upon which the liability of the defendant may be predicated. To my mind the so-called inferences are

no more than mere guesses or speculations and embody nothing but possibilities.

So, too, I can see no application of sec. 85.40 (5), Statutes of 1929, to the facts in this case. The road was plainly visible to the defendant, upon whose car, so far as the evidence shows, there were sufficient lights. The accident occurred at eleven o'clock p. m. There is no claim in the case that the curve in the highway in any way obscured the defendant's vision or prevented her from seeing the deceased or that violation of this statute contributed to the injuries complained of. It seems to me, therefore, pure speculation to say that had the defendant been driving at a lesser rate of speed the accident might not have happened.

In my view of the case the facts failed to establish any liability on the part of the defendant.

I am authorized to say that Mr. Justice NELSON concurs in this dissent.

A motion for a rehearing was denied, with $25 costs, on February 9, 1932.