ESTATE OF PARDEE: HEINEMANN and others, Respondents, vs. ROSIER and others, Appellants.

*December 3, 1941—March 10, 1942.*

20

22

For the appellants there were briefs by *Bradford & Derber* of Appleton, and oral argument by *A. S. Bradford.*

*Claude G. Cannon* of Appleton, for the respondents.

For the respondents Frederick Charles Heinemann, Emil Beck Pardee, and Charles A. Pardee there were briefs by *Homer H. Benton* of Appleton, as guardian *ad litem.*

The following opinion was filed January 13, 1942:

FOWLER, J. The case is an appeal from a judgment of the county court of Outagamie county, in probate. The judgment is incorporated in the concluding sentence of an eight-page typewritten document signed by the trial judge headed "Decision." There are no "Findings of Fact and Conclusions of Law," although interspersed in the document with statements of contentions of the parties, statements of testimony, and statements by the trial judge by way of argument, certain statements may be found that may by inference be taken as conclusions of ultimate material facts and of law. The concluding sentence which incorporates the judgment reads as follows:

"Therefore, it is adjudged that May Pardee (Rosier) Douglas received at different times from her father, C. A. Pardee, during his lifetime, as advancements, various sums of money aggregating $9,368.20, on which there is now due as accrued interest, $16,023.28, in all, the sum of $25,728.36."

The judgment was rendered upon petition of the executors of the will alleging among other things that during thirty

years prior to the testator's death the testator from time to time "loaned" various sums of money to his daughter May, who predeceased him, to evidence which she executed to him her notes promising to pay the sums received "on thirty days' demand" to the testator or his personal representatives with interest, and providing that if unpaid at the testator's death the sum due thereon "should be considered an advancement" against any sum due the maker from the estate of her father; and that at the time of the testator's death there was due and unpaid $9,695.08 principal and $16,033 interest.

It was also alleged that large sums were also loaned by the testator to his son Charles, and two daughters of May, for which like notes were given by the respective parties, which were unpaid.

It was further alleged that when the testator died he believed that as May predeceased him, and as he had made generous provision in his will for her children, her children would not receive her share of the estate under his will, and as May owed as much as or more than her share of his estate her indebtedness "canceled and offset" her such share, and that the legacies and devises to May "lapsed," and the residue of the estate would go to Grace and Charles equally. The prayer of the petition was that the court determine the amount due on their notes or loans for money received by May and her children and Charles and that the amount due from each be offset as cash advancement against his or her share of the estate. The children answered the petition admitting receipt of money by their mother and her daughters from the testator of unknown amounts, denying the amount was as stated, denying the execution of notes by the mother for the amounts received, denying that the amounts received were loans and alleging they were gifts, denying that the amounts received were advancements or can be deducted as advancements from the share their mother, had she survived the testator, would have received under the will or against their shares under the will and the statute as surviving children of their

mother, denying that sums received by May's daughter were advancements, and set up that the statute of limitations bars recovery of the amounts received by their mother if they are not considered as gifts.

The respondents seem to claim that the appellants have no appeal from the judgment appealed from because they offered no evidence on the hearing. This claim is untenable. The only claim that could be made in this respect with any show of reason would be that the thing appealed from is not a judgment or an order finally determining the rights of the parties, and the matter decided can only come up on appeal from the final order entered in the proceedings distributing the estate to the persons entitled thereto under the will. We think, however, that the document signed by the court may properly be considered as in effect an interlocutory judgment under sec. 270.54, Stats., and appealable under sec. 274.09. The latter makes interlocutory judgments appealable. The former provides that "in case of a finding or decision substantially disposing of the merits, but leaving an account to be taken," "an interlocutory judgment may be made, disposing of all issues covered by the finding or decision." The decision substantially disposes on the merits the controlling issue in distribution of the estate, and an account is left to be taken upon hearing of the executor's final account.

We find no motion to dismiss the appeal and would ignore the objection but for the fact that if the thing appealed from were not appealable we would have no jurisdiction.

The appellants also appeal from an order entered after entry of judgment denying their motion to open the case and permit the appellants to introduce in evidence ledger sheets of an account kept by the testator showing payments by him to C. A. Pardee, Jr., but as the denial of the motion becomes immaterial under our decision on the petition we make no further mention of it.

The decision of the county court holds that the moneys received by May were advancements and directed their offset against her share of the estate under the will upon that theory.

That basis of directing the offset adjudged is untenable. Our statutes respecting advancements by their terms apply only to intestate estates. Sec. 318.24 *et seq.*, Stats. The common-law rule unquestionably is that the doctrine of advancements applies only in cases of intestacy. This rule was applied in *Estate of Sipchen,* 180 Wis. 504, 193 N. W. 385. After quoting from 1 R. C. L. p. 657 (see 1 Am. Jur. p. 721, § 12, for restatement of the common-law rule), the opinion, p. 509, states:

"Where, however, the deceased leaves a will, it must be assumed that any and all advancements have been duly considered by the testator, and that the distribution of his estate to the objects of his bounty in accordance with the will represents his wishes in the matter, and the will when admitted to probate becomes final on the subject. By this it is not intended, however, that a testator cannot by the terms of his will provide that advancements shall be taken into consideration in the disposition of his estate, but that in a testate's estate the advancements become effective merely by virtue of the provisions of the testamentary instrument. There is nothing in the will which discloses an intention of the testator to distribute his estate upon any theory or scheme involving advancements."

It is later stated in the opinion, p. 512:

"It is the duty of the court to distribute the estate in accordance with the terms of the will, and in a final decree entered by the court it becomes its duty to assign the assets in accordance with the provisions of the last will and testament. A distribution not in accordance with the provisions of the will would in effect modify the terms of the will, and this cannot be done."

That the terms of a will cannot be modified or corrected is fundamental. See 69 C. J. p. 160. If the court cannot change

the terms of the will, no more can it change its legal effect. As pointed out in the American Jurisprudence text above cited, p. 721, § 12, "The testator is conclusively presumed to have considered the advancements and the bequests made in the will collectively, and to have made distribution [by the will] as he intended to make it." By his execution of the instant will the testator is conclusively presumed to have intended that all money previously given, although intended as advancements when paid to May, be not treated as advancements, else he would have stated in his will that they should be so treated. And this applies equally to payments made after the date of the will. For a will speaks from the time of the testator's death.

The statement in the notes that the sums covered should be considered as advancements is ineffectual to make them such. To give it such effect would make it a testamentary provision as a will or codicil, and it cannot be given such effect because it is not executed with the formality required for the execution of a will or codicil.

Under the above the sums shown by the books of account kept by the testator independent of the notes cannot be offset, as to give them that effect would make them advancements, and they cannot be so considered under the terms of the will. However, although the provision in the notes respecting advancements be void, the notes yet speak for themselves according to their terms as promissory notes. They cannot be considered as intended as advancements because advancements do not bear interest and are not recoverable by the donor, and the notes bear interest and are payable to the payee. As mere notes, if the statute of limitations has not extinguished them or they have not been discharged, the amount due on them may be offset against May's distributive share. *Will of Weidig*, 207 Wis. 107, 240 N. W. 832. As to the notes signed by May if not discharged two questions

arise: (1) What notes did she sign? (2) Were the signed notes discharged by the testator?

(1) There is no competent evidence as to what notes May in fact signed, except the three in evidence. There is evidence that May signed notes based on what the testator said to various persons. These statements of the testator were declarations. To be admissible declarations must be against interest. If they are self-serving they are inadmissible. 1 Jones, Evidence (4th ed.), p. 451, § 235. As to declarations of deceased persons, the rule is that they are admissible against his heirs claiming under him if they would be admissible against the deceased if living. 1 Jones, Evidence (4th ed.), p. 463, § 242. Under this rule the statements of the testator as to the signing or existence of notes of May were all inadmissible. This applies to his letters as well as his oral statements. The testimony of Charles and Mrs. Heinemann as to conversations with the testator were also inadmissible and are barred by sec. 325.16, Stats., because they are parties in interest. The statements of the deceased referred to were objected to and should have been rejected and cannot be considered. There is testimony of Charles that he went to his father's safety-deposit box at the bank at times and there saw notes of May, but he testified that he did not "know how many nor how much." He also testified that, at the time Judge Heinemann made out the form note, he signed a form note covering sums previously received from his father, and was "quite certain that was done [with May] too," that her "first note was relatively large," that he had seen it, and it "was relatively large." Mrs. Pardee said she had seen notes signed by May, but it appears that she like Charles did not know how many or for what amounts these were. Mrs. Heinemann gave no testimony as to the notes, except that after her father's death she looked for them and could not find any except the three in evidence. It is quite plain that

there is no competent evidence to warrant any determination as to the amount of the notes signed by May, except such, if any, as may be made out by her own admissions, or from notations in the testator's books.

(2) The writing of the word "canceled" across the face of May's one note received in evidence clearly enough canceled that note. As clearly did the tearing of the other two cancel them. Sec. 117.37 (3), (4), Stats. The fact that none of the rest of the notes were found among the testator's assets, and the writing of the word "canceled" on the last page of the ledger account of May, in view of the cancellation of the three notes above referred to, leaves no conclusion inferable than that the testator intended to cancel them also. This is fortified by the testimony of Mrs. Pardee giving the testator's answer to her question "How May's death was to affect her interest in his estate?" The answer was "That is canceled." This statement of the testator was admissible as an admission against interest.

The respondents contend that the cancellation of the notes should be held nugatory because it was induced by the testator's mistaken belief that as May had died her legacy and devise had lapsed, and that as the amount received by May with interest exceeded the amount of her share under the will nothing would have been payable to her out of the estate had she lived. The trial judge's decision indicates that he interpreted his "decision" as incorporating a finding of fact that the cancellation was so induced. Although the greater part of the evidence bearing on the reason for the cancellation is incompetent and inadmissible, part of the testimony of Mrs. Pardee tending so to show is competent and is undisputed and is sufficient to support a finding to the effect stated. In answer to her question whether May's children would get her share the testator said: "No, that would go back to the estate, back to Art and Grace. I have provided for the children." However, the mistake of the testator in this respect

was clearly a mistake of law. Whether such mistake warrants relief from the cancellation of the notes is an interesting question. Counsel have not briefed it. The general rule is that courts of equity will not grant relief from a mistake of law. However, relief from mistakes of law, both affirmative and defensive, have been granted. There is a multitude of cases pro and con upon the general subject. They are collected and commented on in a note of one hundred and nine pages in 28 L. R. A. (N. S.) 785 *et seq.* On page 840 of this note is a subhead: "Mistake as to one's own legal rights." The general subject is again annotated in 75 A. L. R. 890 *et seq.,* under the heading: "Relief in equity from mistake of law," in a six-page note collecting the more recent cases and commenting thereon. The subject is also treated at length in 10 R. C. L. p. 308 *et seq.* It appears that a mistake as to one's own pre-existing rights that induce his entering into a contract has sometimes been considered as really a mistake of fact and relief applicable to a mistake of fact has been granted. See pp. 840 and 841 of the 28 L. R. A. (N. S.), note *supra;* 2 Pomeroy, Eq. Jur. (4th ed.) § 849. However, the mistakes involved in such cases relate to contracts or instruments directly between two parties, and the cases cited were between the immediate parties. And in such cases the mistakes must be mutual, or if unilateral, accompanied by some inequitable conduct by the party against whom relief is sought. The adjudicated cases are so conflicting, and the facts involved in them are so diverse, that it would seem that no uniform rule can be deducted from them, and that courts that have not taken a position on the question may grant relief involving mistakes of law if this seems equitable.

This court has granted and has refused relief from mistakes of law. In *Hoberg v. John Hoberg Co.* 170 Wis. 50, 173 N. W. 639, 173 N. W. 952, affirmative relief was granted where the parties were mistaken as to the legal effects of instruments drawn to carry out their intention in respect to

transfers of corporate stock, Justices OWEN and ESCHWEILER dissenting. In *Plumbers W. Co. v. Merchants C. & A. Bureau,* 199 Wis. 466, 226 N. W. 303, relief was refused in case of garnishee defendants failing to answer through mistake of law as to their obligation to answer and the entry of judgment against them by default, the defendants not having applied for relief from the judgment within a year under sec. 269.46, Stats. In *Mathy v. Mathy,* 234 Wis. 557, 291 N. W. 761, reformation of a deed was refused where grantees who fixed its terms were claimed to be mistaken as to the effect of the terms used. In *Wisconsin Marine & Fire Ins. Co. Bank v. Mann,* 100 Wis. 596, 619, 76 N. W. 777, relief from a mistake of law was granted where the instrument did not effectuate the intent of the parties through their misapprehension of the meaning of the language used. In *Rowell v. Barber,* 142 Wis. 304, 125 N. W. 937, a widow, under the belief that a deed placed in escrow to be delivered on her husband's death executed and so delivered to effectuate a void antenuptial agreement conveyed title to the deeded property, went into possession of the property and collected rents. On being informed of her mistake of law as to the effect of such deed she was granted relief from her acceptance of the deed and permitted to file her election to take the provisions made by her by law within the time for filing an election not to take under her husband's will. In *Jenkins v. Bradley,* 104 Wis. 540, 80 N. W. 1025, where property was transferred and accepted under mistake as to the antecedent rights of the transferee, and the transferor occupied a fiduciary relation to the transferee, it was held that relief in equity should be granted.

In *Peter v. Peter,* 343 Ill. 493, 175 N. E. 846, 75 A. L. R. 890, the case to which the note last cited, *supra,* is annexed, the court granted relief from a mistake of law under the following facts: A will gave all of the testator's property to his wife. The widow, as executrix, proffered the will for

probate. She afterward asked to withdraw it from probate, on the ground that the testator left no property, because he deeded all of his property to her on the day that he executed the will. On the widow's application the case was stricken from the docket. Afterwards the widow, in the belief of the parties that the deed conveyed title, executed mortgages on the property. The widow subsequently died testate. The heirs of the original testator claimed title as heirs of their father to his property and asked that the deed to their mother be declared void and they be adjudged owners freed from the lien of the mortgages. The court held the deed void but the father's will was admitted to probate and the widow was held to have taken title under the will; the mortgages were held valid and the property was held to have passed under the widow's will subject to the lien of the mortgages. The widow's request to withdraw probate of the will was held not to have operated as a renunciation of her rights under the will because it was induced by her mistake as to her legal rights under the deed.

The *Peter Case, supra,* is the only one we have noticed in which relief from a mistake of law as to the effect of an instrument was granted after the death of the immediate parties to it. We consider that the relief therein granted was proper, but it does not seem to us to follow from that, that relief from the instant testator's cancellation of the notes should be granted herein. The *Mathy Case, supra,* p. 560, in which we refused the relief of reformation, is more like the instant case than the *Peter Case, supra,* or any other that we have stated or found. In that case premises were conveyed to "Toussaint Mathy and Mary Mathy, his wife, during her lifetime and after her death to the children of said Toussaint Mathy." Long afterwards Toussaint and Mary conveyed to their son Alphonse and he executed a purchase-money mortgage. This mortgage Toussaint afterward sold to his brother Louis, Louis foreclosed it making no one but Alphonse and his wife

parties and Louis took a sheriff's deed of the property. It is true that the opinion in that case is mostly devoted to consideration of the construction of the deed to Toussaint and Mary and not much mention is made of the claim for reformation. It is only said that (p. 561):

"The plaintiffs ask in an amended complaint for reformation of the original deed on the ground of mistake. But there is no evidence of any mistake in the drafting of it. None of the parties to the instrument testified to any mistake. . . . The rights of the parties must be left to rest on the construction given to the deed."

So here. Perhaps the statement in the opinion that there was no evidence of mistake in drafting the deed taken by itself conveyed the idea of mistake of fact only, as distinguished from mistake of law. But the opinion points out that the deed to the son and the sale of his mortgage to the brother of Toussaint were induced by mistake of law as to the effect of the original deed. Yet this was considered insufficient to warrant deprivation of the children of Toussaint of the remainder after the death of Mary which the original deed vested in them, although this deprived the son Alphonse and the brother of Toussaint of the rights which they and Toussaint through mistake of law believed they were acquiring through that deed and for which they paid full consideration. No more should the children of May Douglas be deprived of their rights under the will and the statute than the children of Toussaint should be deprived of their rights under the deed to Toussaint and Mary; and no more should the surviving children of the testator be relieved from mistake of their father in canceling the notes induced by his mistake of law as to the effect of his will and the statute than the children of Toussaint's brother should be relieved from the mistake of law of Toussaint and Alphonse and Louis in misunderstanding the legal effect of the original deed.

As above stated, the petition asks for determination of the amounts due from Charles and the two adult daughters of May on their notes. The judgment appealed from does not determine these questions. Whether anything is due from them depends on the statute of limitations, and this in turn depends on the due date of their notes. Did the notes fall due thirty days after their dates, thirty days after a reasonable time after their dates, or thirty days after actual demand for their payment? This question has not been briefed. As to the daughters of May, it is immaterial, as the petition was filed within six years from their date. As to Charles, he offers to have the amounts deducted from his share of the estate. Perhaps his offer in this respect should be held conditioned on May's notes being held not discharged. At any rate the question may not be raised by him, and in view of this and the want of briefs upon the question we decline to pass upon it.

From the above it follows that the judgment must be reversed with directions to set aside the judgment appealed from; and that under the prayer of the petition of the executors, which may be treated in effect as one for instructions how to distribute the residue of the estate under the terms of the will and the facts found to exist, the reversal will be with directions to enter judgment that the real estate specifically devised to the children of the testator be assigned to the surviving children of the testator if said real estate was still owned by the testator at the time of his death, to each an undivided one-third portion and an undivided one ninth thereof to each of the lineal descendants under the will and sec. 238.13, Stats.; that the remaining portion of the estate be administered in accordance with the terms of the will, and the residue after payment of the specific legacies and compliance with the provisions for the widow of the testator and payment of the expenses of administration be distributed to each of the sur-

viving children of the testator one third thereof, and to each of the lineal descendants of May Douglas one ninth thereof; that there' be offset against the share of Charles A. Pardee, Jr., the amount that shall be found due on the notes given by him to the testator, and from the shares of Jane Douglas and Ina May Douglas the amount of the notes given by them severally to the testator.

*By the Court.*—The judgment of the county court is reversed, with directions to enter judgment in accordance with this opinion.

A motion for a rehearing was denied, with $25 costs, on March 10, 1942.