HALL, Special Administrator, Appellant, vs. WALTON, Respondent.

*May 28—July 1, 1948.*

For the appellant there was a brief by *William S. Rose,* attorney, and *Harry V. Carlson* of counsel, both of Kenosha, and oral argument by *Mr. Rose.*

*Julius Grotsky* of Kenosha, for the respondent.

PER CURIAM.* The question of whether the court was in error in changing the jury's answer to the first question in the special verdict requires an examination of the evidence.

Decedent, Jack Anderson, lived in an apartment in the city of Kenosha for a number of years and was acquainted with the defendant for some time. His nearest relative was a brother who lived in Gary, Indiana. In February, 1947, decedent went to a hospital in Kenosha for treatment and shortly thereafter went to the home of his brother in Indiana, where he remained until about May 11th. On May 12th, decedent and defendant went to the business section of the city of Kenosha together. Decedent went to the First National Bank and withdrew his entire savings account of $4,000 in cash. While

---

* The opinion in this case was prepared by the late MR. Justice BARLOW.

decedent was in the bank defendant went to the store to do some shopping, returned to the bank, and was sitting on a bench in the bank as decedent left the teller's window with the money. They left together and returned to defendant's home.

The testimony of the defendant is that while she was getting supper decedent called her and gave her a $1,000 bill. She claims she in turn gave him $200 in cash, consisting of ten $10 bills and twenty $5 bills. After the evening meal a friend came along and took decedent to his apartment where he remained until the 14th day of May, when he returned to the home of defendant. When he came to the home of defendant decedent was weak so she helped undress him, put him to bed, and called a doctor. The following day defendant examined his clothing and found his billfold with $60 in cash and a $70 check in it. She testified she became very "curious" as to what had happened to the $200 which she had given him in change shortly before, and when she received no explanation decided to write his brother in Indiana. In the letter she did not mention the money but informed him decedent was very ill and requested him to come, which he did. He remained with decedent until May 18th, when he returned to Indiana. The next night he received a message from defendant requesting he return. The brother returned immediately, and on the 21st day of May, 1947, decedent stated to his brother he had withdrawn all his money out of the bank and had it "in his hand," at which time he had no money in his hand, and at the time of making this statement decedent stated to his brother he had $400 in a trunk at the premises he formerly occupied. He was taken to the hospital that night and died the following day. Immediately following decedent's death defendant delivered to the brother keys, two empty wallets, one ring, a watch, and a check for $70 belonging to decedent. Defendant offered to turn over the further sum of $65 which she stated had been given to her to take care of expenses. The brother refused to accept the money and said it should be applied toward expenses.

During all of the time the brother was there defendant made no mention of any money which she had received or the sum of $200 which she now claims she gave to him as change. Decedent had no money at the time he was taken to the hospital, nor was there any money found after his death except the $400 in the trunk. On the 26th day of May, 1947, after funeral services had been held at Kenosha and on the date of the burial of deceased in Gary, Indiana, defendant deposited in the First National Bank at Kenosha the $1,000 bill in her own savings account, which was acknowledged to have been part of decedent's funds.

At the time decedent went to the hospital in February, 1947, defendant stated to Mr. and Mrs. Ben Henderson that she had charge of decedent's business and had property in her possession, including his bankbook.

The trial court changed the answer of the jury because it felt the evidence did nothing more than create mere suspicion, speculation, and conjecture, and did not meet the requirements of the burden of proof placed upon the plaintiff. It is argued there is no testimony in this case except the testimony of the defendant herself that this money was a gift to her by the deceased.

We consider there was sufficient competent evidence to sustain the finding of the jury. Defendant had a direct interest in the result. She was present when decedent withdrew his money from the bank, and at the time of his death had in her possession a $1,000 bill which decedent had obtained from the bank. She testified she became "curious" when the $200 in change which she gave him was not in his pocketbook, and wrote his brother to come at that time. After the brother arrived she did not mention that she had received $1,000 from decedent or that the change which she gave him was not in his pocketbook. Prior thereto defendant had stated to friends that she had charge of decedent's business and had his property in her possession, including his bankbook. All of these are circumstances which the jury had a right to take into consid-

eration in determining the credibility of defendant. A jury is not bound to accept a statement as true because there is no direct testimony contradicting it. It may be inherently improbable or it may be impeached by attendant circumstances. *Young v. Tibbitts* (1873), 32 Wis. 79; *Zimmerman v. Bannon* (1898), 101 Wis. 407, 77 N. W. 735. We conclude the answer of the jury should be reinstated and the case reversed.

Respondent contends that the court erred in permitting Ella Folk to testify that when decedent was leaving his apartment on May 14th he stated to her he was going to the home of defendant to live and that she had money in her possession to take care of him. This was received over respondent's objection. It was not a declaration against interest and must be said to be a self-serving declaration. A party's declarations in his own favor are not admissible. *Carlyle v. Plumer* (1860), 11 Wis. * 96; *Cohn v. Heimbauch* (1893), 86 Wis. 176, 56 N. W. 638; *Markgraf v. Columbia Bank of Lodi* (1931), 203 Wis. 429, 233 N. W. 782; *Estate of Pardee* (1942), 240 Wis. 19, 1 N. W. (2d) 803. The admission of this testimony was clearly prejudicial to the defendant. It permitted the jury to conclude the funds in issue were left with the defendant to be used for decedent's care. This requires a new trial, in view of our conclusion that there is sufficient competent evidence to sustain the jury's verdict.

Judgment reversed, and cause remanded with direction for a new trial.

MARTIN, J., took no part.