FRAWLEY and another, Respondents, vs. KITTEL and others, Appellants.

*March 8—April 12, 1949.*

434

For the appellants there was a brief by *Smith, Okoneski, Puchner & Tinkham* of Wausau, and *McHale & Goodnough* of Antigo, and oral argument by *Richard P. Tinkham, Vernon J. McHale,* and *David Goodnough.*

For the respondents there was a brief by *Schmitt & Bird* of Merrill, and *Robert F. Bruce* of Wausau, and oral argument by *Mr. Leonard F. Schmitt* and *Mr. Bruce.*

MARTIN, J. The question in this case is whether there is credible evidence to sustain the verdict of the jury that the defendant, Walter Kittel, was guilty of negligence as to lookout and control which was a proximate cause of the accident. This requires a consideration of further relevant facts.

The passengers in the eastbound car operated by Kittel, were Mary Ann Hassell in the right front seat, and Rose Marie Frawley, Milton Dahm, and Freddie Greenwood, from left to right in the rear seat.

The defendant, Joseph J. Zemski, driver of the westbound car, testified that he fell asleep at or near the crest of the hill

when he was going forty miles per hour, and that he was asleep until the crash occurred. Herbert Seger, who was riding with Zemski, was also asleep when the collision occurred.

The Zemski car came over the crest of a hill which was about seven or eight hundred feet east of the point of collision.

Kittel testified on adverse examination that he did not see the Zemski car until it was one hundred feet away. This testimony was introduced into evidence on the trial and being in the nature of an admission is substantive evidence in the case. *Leslie v. Knudson* (1931), 205 Wis. 517, 238 N. W. 397.

On the trial Kittel testified that his statement of one hundred feet was only an estimate, that he really saw the Zemski car when it came over the hill, and that when he viewed the scene later he realized that he saw the Zemski car about three hundred feet from the point of the collision. It was coming in a straight westerly direction and he did not notice that its left wheels were on the center line until it was fifty feet from him. He testified further that he started to pull to the right but that when the Zemski car was approximately one or two car lengths east of the Kittel car, the Zemski car suddenly veered to the left directly into the path of the Kittel car, striking it on the left front side. He testified that the turn of the Zemski car was so sharp and sudden that he had no opportunity to apply his brakes or to avoid the collision.

The evidence establishes that the collision occurred about eight hundred feet west of the crest of the hill. Therefore, since the cars were traveling at approximately the same speed, Kittel would have seen the lights of the Zemski car about sixteen hundred feet away if he saw them when they broke over the hill. There was nothing to interfere with visibility, but Kittel did not notice that the left wheels of the Zemski car were on the center line until it was fifty feet from him.

Traffic Officer Cartwright arrived at the scene of the accident twenty-two minutes after it occurred, and he took photographs and measurements of physical markings and debris

found upon the highway that evening, and additional photographs the following morning as soon as it became light enough. He estimated the point of impact to be between one foot and three feet nine inches south of the center line.

The record discloses that during the eight or nine mile drive from the dance hall to the collision, Kittel was trying to put his arm around Mary Ann Hassell, who was riding in the front seat with him, or holding her hand, and that he was holding her hand up to the moment he actually saw the Zemski car.

From this the jury may well have inferred that his attention was focused upon other matters, and that when he saw the Zemski car he became startled and did not realize its position until it was too late for him to take any action to avoid a collision.

Miss Frawley testified that she was not watching the roadway ahead, and that she did not know what course the Zemski car took just prior to the impact or where the Zemski car was on the highway just prior to and at the time of the collision, but she did not recall any sudden veering or movement of the Kittel car just prior to the time of the collision.

We hold that there is credible evidence to support the jury's finding of negligence as to lookout, and that it was a proximate cause of the accident.

It was stated in *Thorp v. Landsaw* (1948), *ante,* pp. 1, 7, 35 N. W. (2d) 307:

"Whether in a given case there was an emergency confronting the driver of an automobile, whether his negligence created the emergency in whole or in part, and whether a person of ordinary prudence might have pursued the same course under the same circumstances, are questions of fact for the jury where the evidence in the case is such that the minds of reasonable persons might differ as to the inferences to be drawn therefrom."

It is undisputed from the photographs of the damaged automobiles and Kittel's testimony that the front of the left front

fenders and left front wheels of the cars came together. From these facts and other facts stated, the jury could infer that at the time of impact the cars had to be traveling in practically a straight line toward each other.

Construing the evidence most favorably to the plaintiffs, the cars came together one foot south of the center line when the impact occurred; that for eight hundred feet the Zemski car traveled toward the Kittel car on the center line or veering steadily toward it and Kittel's lane of travel; that Kittel traveled toward it without reducing speed and with his left wheels one foot from the center line; that for about seven hundred feet he was holding hands with Mary Ann Hassell so that in spite of perfect visibility he did not see the Zemski car until the cars were one hundred feet apart, and that he did not move his car to the right before the impact although he had about three feet of pavement and seven feet of shoulder on his right.

The jury could reasonably draw inferences from the whole evidence to justify finding Kittel negligent as to control. *Thorp v. Landsaw, supra; Basile v. Milwaukee* (1947), 250 Wis. 35, 26 N. W. (2d) 168; *Friess v. Clark Super Gas Co.* (1948), 253 Wis. 40, 33 N. W. (2d) 187; *Rebholz v. Wettengel* (1933), 211 Wis. 285, 248 N. W. 109.

Appellants contend that Kittel's version of how this collision occurred must be accepted and that he was confronted with an emergency and, therefore, is absolved of liability.

It was stated in *Hall v. Walton* (1948), 253 Wis. 138, 142, 33 N. W. (2d) 316:

"A jury is not bound to accept a statement as true because there is no direct testimony contradicting it. It may be inherently improbable or it may be impeached by attendant circumstances."

The jury was not required to accept Kittel's claim that he was confronted by an emergency. This was for the jury to decide. *Thorp v. Landsaw, supra.*

Appellant has cited a number of cases in which the facts and circumstances distinguish them from the present case. For example:

In *Grover v. Sherman* (1934), 214 Wis. 152, 252 N. W. 680, the appellant was alert, he was watching the corner, he kept well to his own side of the road, close to the ditch on his right, and he slowed down. There were no physical facts or circumstances and no testimony to discredit his claim that Rooke's car turned immediately in front of him in his lane of travel. All the facts substantiated this claim. There was nothing to warn Sherman of Rooke's sudden invasion of his path.

In *Frankland v. De Broux* (1947), 251 Wis. 210, 28 N. W. (2d) 256, the truck driver upon observing that the approaching rear car was traveling faster than the head car, pulled his truck two feet onto the shoulder of the road and had no opportunity to get farther to the right.

In *Hoehne v. Mittelstadt* (1948), 252 Wis. 170, 31 N. W. (2d) 150, the weather was extremely foggy and visibility was bad. There was no proof that the defendant driver could or should have seen an approaching car passing a truck and invading his lane in time for him to act.

Kittel's negligence with respect to lookout and control does not permit a holding that the guest, Rose Marie Frawley, assumed the risk as a matter of law. The evidence shows that Rose Marie Frawley and her companion, Milton Dahm, protested to Kittel's attentions to Mary Ann Hassell. The question was submitted to the jury with proper instructions and, on the evidence, this issue was correctly resolved in favor of the plaintiff.

The final question in this case is whether the form of judgment is proper.

We find no merit in the defendants' (insurance companies) argument that when they pay one half of the amount of their

policies, they are entitled to judgment over and against defendant Zemski for one half of the amount paid.

The insurance companies here are to indemnify defendant Kittel on his liability—one in the amount of $5,000, the other in the amount of $10,000, the limits of their policies, plus costs.

The total judgments amount to approximately $27,000. When the two insurance companies have paid the limits of their policies ($15,000, plus costs), then and in that event they will have judgment against defendant Zemski for any amount over one half of the judgment.

Defendant Zemski does not appeal or ask a review. The insurance companies' proportionate shares of the judgment against defendant Zemski shall be proportioned on the amount of their liabilities.

*By the Court.*—Judgment affirmed.