SCHOENBERG, Special Administratrix, Respondent, vs. BERGER and another, Appellants.*

*April 5—May 2, 1950.*

102

For the appellants there was a brief by *Hale, Skemp & Nietsch* of La Crosse, and oral argument by *Thomas S. Skemp.*

For the respondent there was a brief by *Chambers & Armstrong* of Mauston, and oral argument by *Lloyd L. Chambers.*

MARTIN, J. The main issue on appeal is the apportionment of negligence. It is the contention of defendants that deceased should have been held at least fifty per cent causally negligent as a matter of law because he failed to yield the right of way and to keep a proper lookout. The nature of these contentions requires a statement of facts in some detail to determine if there is evidence to support the jury's findings.

The accident occurred about 7 p. m. on August 19, 1947, on State Trunk Highway 71 between the villages of Wilton and Kendall in Monroe county, Wisconsin. The weather was cloudy and it was getting dark.

Highway 71 runs generally in an easterly and westerly direction. The black-top highway at the place of the accident was twenty-five feet wide. There is a sharp curve in the road which, when traveling easterly, veers to the north and also at this point there is a perceptible hill, the crest of which is approximately at the apex of the curve. Where the east end of the curve terminates, there is a side road intersecting Highway 71 on the south side of said highway.

Deceased had been working on a threshing crew that day. He and one Joseph Goetz started moving a threshing rig from a farm along the O'Rourke road to the Kennedy farm which was on Highway 71 about one-half mile west of the point of collision. Goetz drove the rig while Schoenberg parked the Goetz car at the southeast corner of the intersection. Since the rig was forty feet in length, it was agreed that Schoenberg would go to the point of the curve on Highway 71 and direct traffic while Goetz was bringing the rig from the O'Rourke road onto Highway 71. Goetz testified, "From the east they could see us."

Schoenberg stayed in his position at the apex or point of the curve until the rig had successfully negotiated the turn, and the rig was proceeding westerly along the north side of the highway.

The following statement signed by Goetz on August 25, 1947, was brought out on cross-examination:

"I had the threshing rig on Highway 71 and had come far enough around the curve so I could see the straightaway when I met Otto Schoenberg. I was on my right side of the road and Otto Schoenberg was on my left side of the road, on the black-top, I would judge about three or four feet from the edge of the road. He was walking east back toward the

intersection of the town road and Highway 71, where my car and trailer was parked, so he could bring it to the Kennedy farm."

The evidence shows that there is no shoulder or other place to walk on the north side of the highway. The road drops off abruptly into a three-foot ditch which is located between the black-top surface and the base of a steep hill.

The defendant Florence Berger was proceeding easterly toward Kendall on Highway 71. She testified as follows: She saw the threshing rig upon the highway but could not determine at that time its position on the highway, the direction that it was going, or the character of the rig. As she approached more closely, she saw that it was a tractor and separator used for threshing purposes traveling in its proper lane of travel to the north coming toward her and that she would be meeting it rather than passing it. Her usual rate of speed of approximately forty to forty-five miles per hour had slackened to less than thirty miles per hour, and she stepped upon the gas so as to negotiate the hill. At the time she met the threshing rig she was traveling in her right and proper lane of travel to the south of the highway at thirty miles per hour, and the lights on her car were burning.

Mr. and Mrs. Kennedy, who lived adjacent to the highway a quarter of a mile west of the hill upon which the accident happened, testified that they had watched defendant's car as it rounded the curve at a high rate of speed and the lights were not lit.

Defendant stated further that when she first saw Mr. Schoenberg he was in the left lane of travel back of the threshing rig. He was on the north side of the highway close to the center line walking south with his side toward her. She saw Mr. Schoenberg when her vision was clear as she passed the threshing rig. She testified at one time that when she first saw the deceased he was only ten or fifteen feet from her and later that he was approximately forty to forty-five feet

away. She immediately applied her brakes and tried everything to avoid hitting him.

At the scene of the accident a week after it happened, defendant pointed out the respective locations of the deceased, the threshing rig, and her car to the deputy sheriff and county traffic officer, in the presence of her attorney. The measurements at that time disclosed that the front or west end of the threshing rig was one hundred ninety feet from the deceased at the time Mrs. Berger's car met the rig. These measurements correspond with the statement made by Mrs. Berger at the trial that when she approached the rig, it had already reached the apex or sharper point of the curve.

The damage to the automobile was to the right headlight and right fender. There was a large dent in the front of the right fender six or seven inches in diameter in the shape of a football. Mrs. Berger in June, 1948, on adverse examination, stated that there was no damage to the radiator but in August, 1948, went to the courthouse with her attorney and made a correction in this testimony that there was damage to the grille in front of the radiator.

There was crushed headlight glass strewn along the graveled shoulder a foot or two south of the black-top and extending from the point of impact eastward a distance of about twenty-five feet. There was no glass on the black-top. Mrs. Berger testified she heard glass rattle as it fell from the headlight onto the ground as she was driving away to notify Mrs. Schoenberg of the accident. There was a "black spot" on the south edge of the black-top which Mrs. Berger identified as the approximate point of collision with respect to east-west measurements. The broken headlight glass extended east from the black spot.

Deceased weighed about two hundred twenty pounds. He was thrown in a southeasterly direction at least thirteen feet beyond the point which Mrs. Berger claimed to be the point

of impact and was found lying south of the shoulder with the nearest part of his body, his feet, eleven feet south of the south edge of the black-top. His head was toward the south away from the highway. His eyeglasses were found eight feet south of the south edge of the black-top.

Father Timmerman, who came upon the scene of the accident while Mrs. Berger was getting out of her car, and the first officers there estimated that Schoenberg lay twenty or twenty-five feet from where the car came to rest.

There was a compound fracture of the tibia and fibula about the middle of the right lower leg. The principal break was seven and one-half inches above the ankle and the leg was fractured in such a manner that the foot was approximately at a right angle to the knee. There was some bruise at the right shoulder and extensive bruising of both buttocks, although somewhat less on the left. There was a scratch eight centimeters long over the left lumbar area, and two smaller scratches just below it.

The severity of the injuries and the distance Schoenberg was thrown contradict defendant's claim that she was virtually stopped when she struck him. The bruising of both buttocks contradicts her testimony that he was crossing the highway into her lane of traffic when she struck him.

Defendant's testimony that at the time her car struck the pedestrian her right wheels were on the shoulder of the road, as well as the headlight glass and the other evidence set forth above, indicated that Schoenberg was south of the black-top when he was struck.

The jury was not bound to accept the testimony of the defendant Florence Berger who was the only eyewitness to this accident, if contrary to the other proved facts or inferences therefrom. *Feller v. Leonard* (1932), 207 Wis. 43, 45, 239 N. W. 498; *Hall v. Walton* (1948), 253 Wis. 138, 142, 33 N. W. (2d) 316; *Frawley v. Kittel* (1949), 254 Wis. 432, 438, 37 N. W. (2d) 57.

It was stated in *Trautmann v. Charles Schefft & Sons Co.* (1930), 201 Wis. 113, 115, 228 N. W. 741:

"The rule is well established that if the evidence is conflicting, or if the inferences to be drawn from the credible evidence are doubtful and uncertain, and there is any credible evidence which under any reasonable view will support or admit of an inference either for or against the claim or contention of any party, then the rule that the proper inference to be drawn therefrom is a question for the jury should be firmly adhered to, and the court should not assume to answer such question either upon a motion for nonsuit or direction of verdict, or by substituting another answer after the verdict is returned. . . . Under that rule, . . . the inquiry is limited to the narrow issue of whether there is any credible evidence which, under any reasonable view, will admit of inferences which may have been drawn by the jury." See also *Hughes v. Rentschler Floral Co.* (1927), 193 Wis. 49, 53, 213 N. W. 625.

There is evidence to support the jury's finding that the deceased was walking in an easterly direction on the south shoulder of the highway at and immediately before the collision. While the pedestrian Schoenberg was negligent, as a matter of law, both as to lookout and position on the highway, the comparison of the pedestrian's negligence with the negligence of the motorist is clearly a matter for the jury. *Panzer v. Hesse* (1946), 249 Wis. 340, 347, 24 N. W. (2d) 613.

Sec. 85.40 (2) (b), Stats., provides:

"The operator of every vehicle shall, consistent with the requirements of paragraph (a), operate at an appropriate reduced speed when approaching. . . and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway. . . ."

Defendant was very familiar with the highway at the location of the accident as she had traversed the road many times. She knew that as she met the rig she would have to go around the curve and upgrade. Notwithstanding this, she stepped on the accelerator and speeded up as she passed the rig.

The deputy sheriff testified defendant had told him she was in a hurry, she never liked to drive in a storm, and there was a storm approaching. The Kennedys testified as to the high rate of speed as defendant's car rounded the curve.

The evidence clearly shows that defendant's speed was a violation of sec. 85.40 (2) (b), Stats.

The severity of the injuries, the distance Schoenberg was thrown, the headlight glass extending east along the south shoulder for twenty-five feet from the point of impact, and the testimony of a witness who was standing in a field forty rods away that she heard the loud crash, completely contradicts the following testimony of defendant:

"*Q.* Your claim was your car didn't travel after the impact? *A.* If it did it was a very short distance."

Whatever the speed of the car, it is apparent from the accident itself that it was going at a rate of speed which prevented the driver from stopping it in time to avoid the accident. *Pisarek v. Singer Talking Machine Co.* (1924), 185 Wis. 92, 95, 200 N. W. 675; *Ford v. Werth* (1928), 197 Wis. 211, 215, 221 N. W. 729.

Defendants contend that there were three obstructions to Mrs. Berger's lookout—the curve, the rig, and the atmospheric conditions.

The evidence shows that defendant had passed the point of the curve and had a clear view ahead to the east for at least one hundred fifty feet, which was the approximate distance from the rear of the threshing machine to Schoenberg. The atmospheric conditions were such that five witnesses testified they could see plainly a distance of several hundred feet.

Mrs. Berger looked and saw nothing until she was ten to fifteen or forty-five feet from Schoenberg. One who looks without seeing that which is in plain sight is in precisely the situation she would have been if she had not looked at all. *Neuser v. Thelen* (1932), 209 Wis. 262, 269, 244 N. W.

801; *Rock v. Sarazen* (1932), 209 Wis. 126, 128, 244 N. W. 577.

Defendant was not relieved of the duty of maintaining a proper lookout, and her negligence in that respect was a proximate cause of the resulting injury. *Cherney v. Simonis* (1936), 220 Wis. 339, 344, 265 N. W. 203.

The jury took an extended view of the scene of the accident and could see how defendant could have avoided hitting the pedestrian if she had used ordinary care in the control and management of her automobile. They could reasonably draw inferences from the whole evidence to justify finding the defendant negligent in this respect. *Frawley v. Kittel, supra.* She had twenty-five feet of black-top without any other traffic after she passed the rig. There was evidence that instead of going straight ahead the defendant swung to her right and in so doing continued on to the point where she struck the pedestrian.

Defendants rely on *Crawley v. Hill* (1948), 253 Wis. 294, 34 N. W. (2d) 123, which is distinguished because in that case the pedestrian was not on the highway for a period long enough to have been seen by the driver in time to have avoided hitting him. An emergency was created by the act of the pedestrian in running out into the line of travel of the approaching motorist at a time when it was impossible for the motorist to do anything about it. In the present case there is evidence that supports the jury's finding that the deceased was walking in an easterly direction along the south shoulder of the highway at and just before the accident and that the negligence of defendant with respect to speed, lookout, management and control, acted in combination to cause the accident. In *Burke v. Tesmer* (1937), 224 Wis. 667, 272 N. W. 857, the jury found, as a fact, that plaintiff was more negligent than the defendant, and that case has no application to the present case. The evidence is undisputed in *Weber v. Barrett* (1941), 238 Wis. 50, 298 N. W. 53, that

the pedestrian ran suddenly into the lane of travel of the defendant driver.

The deceased, Otto Schoenberg, was sixty-one at the time of the accident. He had lived on the same farm for thirty-two years. His income in 1944 was $1,966.57; in 1945, $1,868.61; and in 1946, $2,185.57. His 1947 income was running about the same rate that it had in 1946. He was in moderately good health. He took care of about twenty milk cows, did the field work, helped his wife in the garden, and spent all of his time at home with his wife except when he was working. On the day of the accident he worked all day on a threshing crew. The physician who attended Schoenberg for approximately five years prior to his death testified that in his opinion Schoenberg's normal life expectancy was not materially reduced by reason of high blood pressure or any other physical condition.

The jury had a right to consider the support and pecuniary benefit the widow would probably have received from the husband during his life had he lived, in view of his earnings. *Neuser v. Thelen, supra.* The amount of $3,900 awarded was not excessive.

*By the Court.*—Judgment affirmed.