BURKE, Appellant, vs. TESMER, Respondent.

*April 8—April 27, 1937.*

For the appellant there was a brief by *William Gough* and *Alexander Wiley*, attorneys, and *Marshall A. Wiley* of counsel, all of Chippewa Falls, and oral argument by *Marshall A. Wiley*.

For the respondent there was a brief by *W. H. Stafford, Harold E. Stafford*, and *Marshall Norseng*, all of Chippewa Falls, and oral argument by *Harold E. Stafford*.

NELSON, J.    On June 30, 1935, the defendant was driving his automobile in a northerly direction along United States Highway No. 53, an improved concrete highway, the roadbed of which is eighteen feet wide (twenty feet at the place of the accident).    County Trunk Highway S is a gravel road which intersects Highway No. 53 at right angles. From the intersection mentioned Highway No. 53 runs in a southerly direction for several hundred feet up a comparatively steep grade and then curves to the southwest.    It is the same intersection that was involved in *Rock v. Sarazen,* 209 Wis. 126, 244 N. W. 577.    Early in the afternoon on the day in question, the plaintiff, a farm hand, went to a tavern which was located southwest of the intersection some distance back from both highways.    He left the tavern at about 3 o'clock, proceeded in a northeasterly direction toward the southwest corner of the intersection intending to cross over Highway No. 53 and then proceed easterly along County Trunk S.    He testified that when he reached the edge of the concrete he first looked to the south and ob-

served no car in sight; that he could see about four hundred fifty feet; that he then looked to the north and observed an automobile approaching from that direction about a quarter of a mile away; that he then started to cross the concrete on a line approximately three to four feet northerly from the south fence line of County Trunk S; that while crossing he looked only to the north and had his head turned in that direction; that when he reached a point five or six feet beyond the black line, he was struck by defendant's automobile; that he did not see the defendant's automobile before it struck him, and that he did not hear the defendant's horn which, according to the defendant's testimony, was sounded at a point about fifty feet south of the south line of the intersection. After striking the plaintiff, the defendant's car ran a short distance and stopped a few feet north of the north line of County Trunk S.

The plaintiff contends that the court erred in holding that he was guilty of causal negligence as a matter of law. The court was of the opinion that the plaintiff was guilty of a slight want of ordinary care in proceeding across Highway No. 53 without again looking to the south while crossing. It was the opinion of the trial court that sec. 85.44 (1), Stats., is not applicable to a highway intersection in the country; that, therefore, the plaintiff, as a pedestrian, did not have the right of way and the defendant owed no duty to yield the right of way to him. Sec. 85.44 (1) provides:

"The operator of any vehicle shall yield the right of way to a pedestrian crossing the highway within any marked or unmarked crosswalk at an°intersection except at those intersections where the movement of traffic is being regulated by traffic officers or traffic control signals."

The plaintiff contends that that section is applicable to all highway intersections, whether located in cities, villages, unincorporated settlements, or in the country. While conceding that there was no marked crosswalk at that intersection, the plaintiff contends that by virtue of the statute, an "un-

marked crosswalk" existed at that intersection. Sec. 85.10 (23), Stats., defines a crosswalk as "that portion of the highway ordinarily included within the prolongations of the curb and property lines at intersections." There existed on neither side of County Trunk S, either to the east or the west of Highway No. 53, a sidewalk or path of which the suggested "unmarked crosswalk" might in any sense be considered as a continuation. Considering the fact that no walk or walks existed along either side of County Trunk S and that County Trunk S had no curbs thereon and was nothing more than a graded graveled country highway, we reach the conclusion that no "unmarked crosswalk" existed at that place, and that therefore the plaintiff, in crossing Highway No. 53, did not have the right of way in crossing, and the defendant owed him no duty to yield the right of way.

Sec. 85.44 (4), Stats., provides:

"Every pedestrian crossing a highway at any point other than a marked or unmarked crosswalk shall yield the right of way to vehicles upon the highway."

Since, in our view, there was no marked or unmarked crosswalk at the place of the accident, it was the duty of the plaintiff to yield the right of way to the defendant's automobile. A careful consideration of the several statutes mentioned, supports the conclusion that the legislature did not intend that sec. 85.44 (1), Stats., should be applicable to highway intersections existing in the country, especially where no walks exist. The plaintiff was familiar with the intersection, knew that from the point of crossing he could see only a comparatively short distance to the south, knew that Highway No. 53 carried heavy, fast-moving traffic, and knew of the dangers in crossing that highway. He answered the following questions thus:

"Q. You knew that was a rather dangerous crossing for traffic that comes around the curve and down the hill from the south? A. Yes, sir.

"*Q.* At the time you were crossing the west half of the concrete and about to enter the east half, which was the traffic lane for the traffic from the south, did you consider that you were entering a dangerous zone? *A.* Yes, sir.

"*Q.* If you had looked to the south, there was no obstruction or anything there that would interfere with your view to see a car coming some four hundred fifty feet away, was there? *A.* No, sir."

It is conceded that the plaintiff made no observation to the south except before starting to cross.

In our opinion, only one conclusion is permissible from the plaintiff's own evidence, and that is, that he was negligent as a matter of law, and that such negligence was a cause of his injuries. The jury found the defendant negligent, and in comparing his negligence with that of the plaintiff, found that it amounted to but ten per cent of the total causal negligence. In so finding, the jury obviously concluded that the defendant's negligence contributed but little to the accident.

The plaintiff earnestly contends that this case is ruled by *Salsich v. Bunn,* 205 Wis. 524, 238 N. W. 394. In that case the plaintiff made but a single observation before proceeding to cross an eighteen-foot concrete roadbed in a residential section of a village. Before attempting to cross, Salsich observed Bunn's car approaching from his right at a reasonable rate of speed and concluded that he had time to cross ahead of it. He was struck by the right front fender of Bunn's automobile after he had reached the shoulder beyond the concrete. The situation there was compared to crossing a state or United States highway in the country, but in that case the plaintiff had an opportunity to make "an effective and adequate observation" before crossing. In the present case, the plaintiff's observation was limited by the distance he could see, and in our view, he had no right to rely upon a single observation made before crossing. The accident involved in *Salsich v. Bunn* occurred prior to the enactment of sec. 85.44

(4), Stats. Had that section been in force and effect at the time of that accident a different conclusion might have been reached, since Mr. Salsich did not cross the highway at a marked or unmarked crosswalk, but in the middle of the block.

The plaintiff next contends that the court erred in submitting to the jury a single question as to defendant's negligence, contrary to the plaintiff's request that that question be subdivided. The plaintiff's complaint charged that the defendant was negligent as to lookout, control, speed, yielding the right of way, failure to signal or warn, insufficient brakes, etc. At the conclusion of the evidence, the court submitted this question:

"Shortly before and about the time of plaintiff's injury, was the defendant William H. Tesmer negligent in operating his car at such a speed and in such a manner that he failed to avoid colliding with the plaintiff?"

The jury answered the question "Yes." We perceive in the form of this question nothing calculated to prejudice the plaintiff. Its form might be subject to criticism by the defendant, particularly that part of it which contains the following language: "That he failed to avoid colliding with the plaintiff." See *Quinn v. Hartmann,* 210 Wis. 551, 556, 246 N. W. 587, but in our opinion it was not prejudicial to the plaintiff. It permitted some of the jurors to find the defendant negligent as to speed, others as to failure to warn, others as to failure to stop or control his automobile.

The plaintiff's contention that the court erred in not granting his motion for judgment notwithstanding the verdict is without merit and requires no additional discussion.

*By the Court.*—Judgment affirmed.