LIND, Plaintiff and Respondent, vs. LUND and another, Defendants and Appellants: THORNE, by Guardian *ad litem,* Interpleaded Defendant and Respondent.*

*February 4—March 2, 1954.*

* Motion for rehearing denied, with $25 costs, on May 4, 1954.

For the appellants there was a brief by *Cavanagh, Mittel-staed, Sheldon & Heide* of Kenosha, and oral argument by *William A. Sheldon.*

For the respondent there was a brief by *Kenney, Korf & Pfeil* of Elkhorn.

For the interpleaded respondent there was a brief by *La France, Thompson & Zahn,* attorneys, *Alfred E. La France* of counsel, and *John F. Thompson,* guardian *ad litem,* all of Racine, and oral argument by *Mr. Alfred E. La France* and *Mr. Thompson.*

GEHL, J. By its answers to questions of a special verdict the jury absolved Mrs. Lind of negligence. It found Thorne guilty of causal negligence with respect to speed, management and control, and yielding the right of way, and that such negligence increased the danger assumed by his guest, Carol Lind, upon entering his automobile. It found Lund causally negligent with respect to crossing the intersection at too low a rate of speed and that by such negligence he increased the danger assumed by his wife upon entering his car.

The trial court changed from "No" to "Yes" the answers to each of the questions which inquired as to Lund's lookout, thus holding, as a matter of law, that Lund was guilty of causal negligence in that respect and that by such fault he increased the danger assumed by his wife when she entered the car. Counsel for Lund and his insurance carrier contend that the court erred in so doing.

Mr. and Mrs. Lund testified that their car was stopped, first at the stop sign on Highway B and again five feet south of the south limits of the roadway on Highway 50 and that at the second stop they waited a substantial period of time for the heavy traffic on Highway 50 to clear. Lund testified that at that point he was far enough into the intersection so that he could see both ways.

It is undisputed that from the point at which the Lund car stopped the second time an entire automobile approaching the intersection from the west was visible to the Lunds at a distance of 265 feet and that from that point the top of an eastbound approaching automobile was visible at a distance

of 316 feet. Lund testified that when he made his second stop he looked to the east and west, shifted his car into low gear, and proceeded ahead; he made no further observation to the west but looked north in the direction in which he was proceeding.

Thorne testified that when he came over the crest of the hill 265 feet west of the intersection he saw the Lund car and reduced his speed to between 40 and 45 miles per hour; that he kept his eyes on it at all times; that he saw the Lund car until it reached Highway 50 and stopped; that he would say that it stopped south of the traveled portion of Highway 50 at which time he was about 100 feet from the intersection; he could not say how long the car stopped but testified that it started up again just as he was about to enter the intersection at which time the cars were about 50 feet apart. There is no evidence, such for instance as skid marks, to indicate that Thorne was traveling at a higher rate of speed. When the two cars collided the Lund car had crossed the south half of Highway 50 and had entered its north half a distance of about two feet. Thorne swung his car to the north in an effort to pass in front of the Lund car.

There is no escape from the conclusion that when Lund started forward he could have seen the entire Thorne car at a distance of 265 feet from him, and a part of it when it was 316 feet from him. From the latter distance and traveling at the rate of 45 miles per hour it took Thorne four to five seconds to reach Highway B during which time his car was in plain sight of Lund and should have been seen by him. In either case, whether he looked without seeing the Thorne car, or whether he did not look at all, he was at fault. *Schoenberg v. Berger,* 257 Wis. 100, 42 N. W. (2d) 466. *Lake to Lake Dairy Co-operative v. Andrews,* 264 Wis. 170, 58 N. W. (2d) 685. His duty to make an adequate observation was enhanced by the fact that traffic on Highway 50 was so heavy that he, as he testified, waited probably three to four

minutes after his second stop for an opening in the east-west traffic to permit him to proceed forward.

"It has many times been held by this court that travelers on a highway, whether pedestrians or drivers of automobiles, must look out for approaching traffic, and that they must not only look, but must look with such attentiveness and care as to see what is in plain sight, and that if they are injured because they fail to do so they are guilty of negligence as matter of law." *Ebel v. Rehorst,* 212 Wis. 122, 123, 248 N. W. 799.

Lund concedes that he made no observation to the west except before starting to cross. He had no right to rely upon a single observation made before crossing a highway which, as he admitted, carried heavy traffic and was known to him to be a dangerous crossing. *Burke v. Tesmer,* 224 Wis. 667, 272 N. W. 857. Had he looked to his left again shortly before entering the traffic lane of Highway 50 he would have seen the car and have been able to delay his advance so as to avoid a collision with it.

Counsel for Lund cite a number of cases holding that negligence with respect to lookout is a question for the jury. Others, such as *Rock v. Sarazen,* 209 Wis. 126, 244 N. W. 577, a case which in its facts is quite similar to the instant one, hold that under the circumstances involved failure to make proper observation is negligence as a matter of law. It would not be helpful to recite the facts and discuss these cases in detail. Every case must stand upon its own facts. *Crane v. Weber,* 211 Wis. 294, 247 N. W. 882.

The court did not err in changing the answers to the questions inquiring as to Lund's lookout and thus holding as a matter of law that he failed in that respect.

Lund contends that the court erred in submitting the question whether he crossed the intersection at too slow a rate of speed. Negligence in that respect was not pleaded by plaintiff. Error, if there was error, in submitting the question was

waived, no objection to the inclusion of the question having been made. *Shear v. Woodrick,* 181 Wis. 30, 193 N. W. 968.

It is urged that there is no testimony to support the finding that Lund proceeded too slowly. With that we agree. We have recognized that under some circumstances the driver of an automobile may be found guilty of negligence in driving his car too slowly. *Forecki v. Kohlberg,* 237 Wis. 67, 295 N. W. 7, 296 N. W. 619. But it seems to us that Lund failed in but one respect—lookout. The Lunds testified that at the time of the impact their car was traveling slowly. He testified that at that time he was traveling "maybe six miles per hour . . . I don't think it would be any more than that,—not on them older cars." There is no testimony to indicate how rapidly a car such as Lund was driving could be accelerated from a complete stop and in a distance of 18 feet. Nor is there anything to permit the inference that Lund could have proceeded more rapidly and thus have cleared Thorne's lane of traffic to avoid the collision. The finding is based upon mere conjecture; we may not permit it to stand.

Lund complains that the court declined to submit to the jury a question as to the negligence of the plaintiff as to lookout. He is in no position to complain on that score; he made no request for inclusion of such question in the verdict. Nor was the question raised in Lund's motions after verdict. The question is one of fact—one which will not generally be decided by this court when not brought to the attention of the lower court. *Herro v. Heating & Plumbing F. Corp.,* 206 Wis. 256, 239 N. W. 413.

It is contended that the negligence of Thorne should be held to have been imputed to the plaintiff. It should be noted that counsel made no request for a question on that subject. Thorne was on his way to Chicago in his mother's car. She had asked him to take Mrs. Lind, his aunt, with him. She wished to do some shopping in Chicago and had been asked by the mother to accompany Thorne as she "didn't like him to

go alone." The answer to Lund's contention is stated satisfactorily to us in the trial judge's memorandum opinion where he says:

"So far as the record discloses Carol Lind neither sought nor obtained any control or right of control over either the automobile or the driver. The fact that he was a minor and that the relationship between them was that of nephew and aunt gave her no control or right of control over him. There is nothing in the record to indicate that she either exercised or attempted to exercise any such control. She desired to go to Chicago and so did he, but she was going for her own purpose in which he had no interest and he was going for his own purpose in which she had no interest. He would have gone to Chicago with the automobile irrespective of whether or not she became an occupant of the car. The owner of the car was not called as a witness. There was no request that any question be submitted to the jury with respect to either agency, joint adventure, or joint bailment of the plaintiff Carol Lind. On this point see *Hansberry v. Dunn*, 230 Wis. 626, 637. The trip was not taken for any business purpose common to both driver and occupant. Carol Lind owned an automobile but by riding with Thorne she avoided the necessity of driving her own car or making the trip to Chicago by some other means. The court is satisfied that the purpose of the trip was social, that the relationship between Carol Lind and Montgomery Ward Thorne was that of guest and host and that no relationship of joint adventurers, joint bailees, principal and agent, or mutual agency existed between them and that the negligence of Thorne is not as a matter of law imputable to Carol Lind. See also the cases of *Renick v. Klein*, 230 Wis. 123, and *Hynek v. Milwaukee Automobile Ins. Co.* 243 Wis. 591."

Judgment for plaintiff in the sum of $83,306.39 was entered against Lund and his insurance carrier and Thorne. It is apparent that so far as it affects the carrier it was prepared in error, for the order for judgment directs entry of judgment in that amount but provides that it shall "bind Phoenix Indemnity Company only to the extent of $10,000, plus the

costs and disbursements of this action." The judgment should be modified so as to comply with the order. It is obvious that if the trial court's error had been called to its attention there would have been no objection to correcting it and, therefore, the matter of taxing costs in this court should not be affected by the modification.

*By the Court.*—Judgment modified as directed in the opinion and, as so modified, it is affirmed.

* Motion for rehearing denied, with $25 costs, on May 4, 1954.